CONNELLY *v.* STATE.

5007                                            350 S. W. 2d 298

Opinion delivered September 18, 1961.

[Rehearing denied November 6, 1961.]

*G. W. Lookadoo, Holt, Park & Holt,* for appellant.

*J. Frank Holt,* Attorney General, by *Russell Wools,* Asst. Attorney General, for appellee.

ED. F. McFADDIN, Associate Justice. This is the second appearance of this case. In September 1959 appellant, Mrs. Bonnie Connelly, was convicted in the Garland Circuit Court of second degree murder for the homicide of her husband, Joseph E. Connelly; and on her appeal to this Court the judgment was reversed for error in the admission of evidence. (See *Connelly* v. *State,* 232 Ark. 297, 335 S. W. 2d 723.) On retrial in the

Garland Circuit Court in September, 1960, appellant was convicted of the crime of manslaughter (§ 41-2207, Ark. Stats.); and she now prosecutes the present appeal in which the motion for new trial contains forty assignments.

I. *Sufficiency Of The Evidence.* It was proved— in fact, admitted—that on April 28, 1959, appellant shot and killed her husband, Joseph E. Connelly, from whom she had been separated for several months. The homicide occurred at the home of Mrs. Connelly. She pleaded "self defense and defense of her home to prevent threatened invasion by deceased for the purpose of assaulting her or offering her great personal violence." The weapon used by Mrs. Connelly was one she had purchased in 1958. It was a 9-shot .22 caliber pistol. After the homicide the weapon contained five expanded and three unexpended shells. Appellant testified that about three o'clock in the afternoon on the day in question, Joseph Connelly tried to force his way into her home. She said he picked up a rock, cursed, and threatened to come in and kill her if she did not go outside. Thereupon, she took the pistol and went out; and she testified that in an ensuing struggle Connelly struck her and tried to pull her into the car, and that the first shot was fired accidentally. She claimed the other shots were fired merely to get Connelly to leave after he made additional threats.

Contradictory to the testimony of appellant and in support of the State's case, there was the testimony of several neighbors who witnessed the affair. One neighbor, who lived about 150 feet away, testified that his attention was directed to the Connelly house by loud talking between Mr. Connelly and the appellant; that Connelly started toward his own car; that appellant was about ten feet away from Connelly when appellant fired two shots; that after Connelly entered his car appellant fired three additional shots. The witness saw no struggle between Connelly and appellant. There was other and additional evidence: an expert witness testified that the direction and course of the bullets in the body of deceased

showed that appellant was at a place above her husband when she fired the bullets into his body. Since she was not as tall as her husband, such testimony would tend to negative her claim of a struggle.

Without further detailing of the evidence, we conclude that it was amply sufficient to support the jury verdict finding the appellant guilty of manslaughter. Section 41-2218, Ark. Stats., says:

"The killing of a human being in the heat of passion, by or with a dangerous weapon, in any case except wherein the killing is herein declared to be excusable or justifiable, shall be adjudged manslaughter."

II. *Rulings In Regard To Evidence.*

(A) The State was allowed to show that there were three Connelly cases pending. One was a Circuit Court case styled "Mrs. Bonnie N. Connelly v. Arthur P. Connelly and Mrs. Jeannette M. Connelly," suit for damages. The second was a Chancery case styled "Bonnie Jo Connelly, a minor, Ex parte," petition to remove disabilities. The third was a Chancery case styled "Joseph E. Connelly v. Bonnie Nichols Connelly," suit for divorce. The State offered merely the record of the filing and not the contents of the pleadings; and the Court specifically limited the testimony in the following ruling: "They will be introduced on that basis only, that they show the records as they exist here in Garland County, Arkansas, between the various parties involved and the contents thereof . . . will not be divulged to the jury." We find no error in the Court's ruling. The fact that Mr. and Mrs. Connelly were estranged was admitted all during the trial; and so no prejudice resulted from the evidence here offered. Furthermore, in *Spivey and Lynch* v. *State,* 114 Ark. 267, 169 S. W. 949, we said:

"As a fact to show the feeling and relation of the parties to each other, it was competent to show the pendency of the divorce suit between them. The pendency of the suit, the parties to it, and the grounds of

the complaint or cross-complaint, whether for desertion, adultery, cruel treatment, etc., might properly have been admitted in evidence as showing the state of feeling between the parties and as indicating the motive for the killing. *Binns* v. *State,* 57 Ind. 46; *Pinckerd* v. *State,* 13 Texas Court of Appeals 468; McClain on Criminal Law, Vol. 1, § 416.''

(B) On rebuttal the State was permitted to call Arthur Connelly, who testified in regard to a controversy that occurred in March, 1957, at the Connelly printing office, a business owned by Mrs. Jeannette Connelly and operated by the witness, Arthur Connelly, and his brother, Joe Connelly, the deceased. The appellant had testified on direct examination:

''We have always had difficulties due to in-law interference, but the main difficulty that led to this accident started when I was employed at Connelly Press, and there was an incident at Connelly Press where my mother-in-law and brother-in-law hit me and my husband took my side of it and after that period of time I would say that was when it started really after that period of time.

''Q. What was the date of that, if you recall, the month and year?

''A. It was in latter March, I think it was March 25, 1957.''

To rebut Mrs. Connelly's testimony, the Court permitted Arthur Connelly to testify:

''A. On the particular morning, the 21st, about 8:15, in the morning that I got down to work a few minutes later Mrs. Connelly and her husband came to work.

''Q. You mean your brother Joe and Bonnie Connelly?

''A. Yes, sir. I was doing my work in a room set off from the regular work room so I went back and was working with my work and it wasn't long before I could hear voices, Bonnie and Mother's, two voices, and as

time went on they kept getting louder and louder and I knew some sort of raucus was going on so just as I stepped to the door to look in I saw Bonnie strike mother with her fist . . .

"Q. Did you ever see your mother, Mrs. Jeannette Connelly, strike Bonnie?

"A. No sir."

Since the appellant, on direct examination, first brought up the affair that occurred at the Connelly Press in March 1957, certainly the State had a right to rebut such testimony; so we find no error.

III. *Rulings In Regard To Instructions.* The Court gave a total of seventeen instructions, some on the Court's own motion, some at the request of the State, and some at the request of the defendant; and these instructions covered every possible phase of the case. Among others, the Court gave the State's Instruction No. 3, which read as follows:

"If you find beyond a reasonable doubt from the evidence in this case that the defendant and deceased engaged in a quarrel or other difficulty and that the deceased, Joe Connelly, *had abandoned such difficulty* but that it was renewed by the defendant and that the defendant shot Joe Connelly after such renewal of the difficulty without sufficient provocation and such shooting caused the death of the deceased then it will be your duty to find the defendant guilty." (Emphasis supplied.)

The appellant specifically objected to the instruction on the basis that it eliminated her claim of self defense and defense of home and property and her right to stand her ground without retreat. The instruction was a correct declaration of law. We have italicized certain language in the instruction to show that the theory of the State in this instruction was that the deceased had abandoned the controversy and that the defendant renewed it. Certainly, the State was entitled to an instruction on that phase of the case, in view of

the testimony of several of the witnesses, as previously mentioned herein, to the effect that Mr. Connelly was never closer than ten feet to Mrs. Connelly and that he had, in fact, entered his car to drive away when she continued to fire at him.

Mrs. Connelly's claim of self defense was covered in other instructions—the defendant's requested instruction No. 14 and the Court's instruction No. 12—so there was no error in giving the State's instruction No. 3.

The Court gave as one instruction the statutory language contained in §§ 41-2233 and 41-2234, Ark. Stats., as follows:

"You are instructed that every man's house or place of residence shall be deemed and adjudged in law, his castle. A manifest attempt and endeavor, in a violent, riotous or tumultuous manner to enter the habitation of another, for the purpose of assaulting or offering personal violence to any person dwelling or being therein, shall be a justification of homicide."

This instruction, together with the Court's instruction No. 12 and the other instructions given, fully presented the defendant's theory of defense. There was no error in the Court's rulings regarding instructions.

We have examined all of the other assignments in the motion for new trial and find none to possess merit.

Affirmed.