## NATIONAL CREDIT CORPORATION *v.* J. T. RITCHEY

5-5770                                      477 S.W. 2d 488

Opinion delivered March 13, 1972

*Dickey, Dickey & Drake,* for appellant.

*Jones & Matthews,* for appellees.

J. FRED JONES, Justice. This is a "slip and fall" case in which National Credit Corporation appeals from a judgment of the Jefferson County Circuit Court on a jury verdict in favor of the plaintiff-appellee, J. T. Ritchey, in the amount of $37,500. Mr. Ritchey alleged in his complaint that he went to National Credit's place of business as a business invitee; that he was carrying a bank deposit bag containing $6,300 consisting of sixty $100 bills and six $50 bills; that he slipped and fell on the slick terrazzo floor in the lobby of National's office and was injured. He alleged that National Credit was negligent in maintaining a slippery floor and by the exercise of ordinary care should have known that the floor was slippery and likely to cause injury; that the floor was highly waxed and polished and National Credit failed to warn him of the dangerous condition. He alleged that after his fall the money was taken from the bank deposit bag and that the loss of the $6,300 was proximately caused by the negligence of National Credit and was an element of his damage.

In its answer National Credit denied that Mr. Ritchey slipped and fell as he alleged, but that if he did so it was because of his own negligence. National Credit further denied that Mr. Ritchey had $6,300 in cash and alleged that if he did have such sum of money, it was never in the possession of National Credit or in the possession of its agents or employees and that National Credit was not liable for such loss.

On its appeal to this court National Credit designates the points on which it relies for reversal as follows:

"Appellant's motion for a directed verdict and motion for a judgment notwithstanding the verdict should have been granted.

Appellee's knowledge of the condition of the floor barred his recovery.

The lower court erred in giving plaintiff's instruction No. 13, section fourth and refusing to give defendant's instruction No. 19.

The lower court erred in refusing to give defendant's instruction No. 20.

Appellant's motion for a new trial should have been granted because the jury reached a verdict in a manner contrary to law."

Considering the points in the order designated, we are of the opinion that the trial court did not err in refusing National Credit's motion for a directed verdict and its motion for a judgment notwithstanding the verdict. Mr. Ritchey testified that he took three of four steps on the terrazzo floor and his feet slipped on the slick floor; that he tried to protect himself from falling, but that he first landed on his left hip and then on his elbow and shoulder and then finally he bumped his head on the floor. He says that after he bumped his head he was unable to see, but does remember that he had his bank book and money beside him when he first fell. He says that his left side was paralyzed and that he was unable to get up from the floor. He says that he went back to the credit company after he was released from the hospital and the floor was still as "slick as ice." He testified that about three weeks before his accident he walked over the same area with Mr. George Puddephatt, the manager of National Credit, and that Mr. Puddephatt's foot slipped five or six inches on the slick floor and that he remarked to Mr. Puddephatt that the floor was too slick, whereupon Mr. Puddephatt told him that they had just recently changed wax; that they knew it was too slick but did not know whether any changes would be made or not. He testified that he told Mr. Puddephatt that somebody was going to get hurt on the floor as it was too slick to stand up on and that Mr. Puddephatt told him he knew it.

Mr. George Puddephatt testified that he examined the

floor and could see no difference in its condition after Mr. Ritchey fell and its condition prior to his fall. He testified that Mr. Ritchey had been in the place of business nearly every day for a period of five years. He denied that he ever slipped on the floor himself or had ever seen anyone else slip on it, and he denied that he ever discussed a slick floor with Mr. Ritchey.

Mr. Oliver Lee Thompson testified that he has been janitor and caretaker of the building involved for 13 years. He testified that there are two kinds of floor in the National Credit lobby and offices. He says that on the inside where the employees work, the floor is tile and that in the lobby the floor is terrazzo. He says that in cleaning the terrazzo floor he uses a liquid material in water and wet mops the terrazzo floor in order to clean it. He says that after the terrazzo floor dries thoroughly, he buffs it. He says this is done once a week except in bad weather when it is done more often. He testified that he does not apply wax to the terrazzo floor. He says that he goes over the floor every morning with a dust mop before anyone gets to the building and that once each month he cleans and waxes the tile floor inside the offices. He testified that he waxes and buffs the tile floor where the employees work and that after he cleans the terrazzo floor with the liquid substance in water and dries it, he buffs it with the same buffer he uses on the tile floor.

The decisions are not in harmony on slip and fall cases. As pointed out by Chief Judge Miller in the United States District Court case of *Pearson* v. *U. S.*, 177 F. Supp. 934, our previous slip and fall cases in Arkansas involve situations where the plaintiffs slipped on "something." Very recently in *J. Weingarten* v. *Thompson*, 251 Ark. 914, 475 S.W. 2d 697 (1972), we said:

"There is no dispute about the law. The plaintiff, to recover, must show either that the presence of the object ro substance which caused her fall was the

result of the defendant's negligence or that it had been on the floor for such a length of time that the defendant should have known of its presence and failed to use ordinary care to remove it."

The Colorado court in *Sanderson* v. *Safeway Stores, Inc.,* 421 P. 2d 472, in affirming the trial court's dismissal of an action for damages in a slip and fall case, said:

"In this state proof that the floor was waxed is not enough; it is still incumbent on the plaintiff to prove that the waxing was done negligently resulting in a dangerous condition. . .Testimony that the floor of the store was slick and clean, a common condition, fails to indicate negligence"

In California a slightly different rule seems to prevail. In *Nicola* v. *Pacific Gas and Electric Co.,* 50 Cal. App. 2d 612, 123 P. 2d 529, the California Court of Appeals said:

"If wax, or, as in the present case, both wax and soft soap, are applied to the floor, it must be in such manner as to afford reasonably safe conditions for the proprietor's invitees, and if such compounds cannot be used on a particular type of floor material without violation of the duty to exercise ordinary care for the safety of invitees, by reason of the dangerous conditions they create, they should not be used at all. Of course slipperiness is an elastic term. From the fact that a floor is slippery it does not necessarily result that it is dangerous to walk upon. It is the degree of slipperiness that determines whether the condition is reasonably safe. This is a question of fact.

By this opinion we adopt the view expressed by the California Court in *Nicola* and hold that the question of negligence was properly submitted to the jury in the case at bar.

Under the appellant's second point it argues that as a matter of law Mr. Ritchey's negligence was as great or

greater than that of National Credit. The cases cited in support of this contention are automobile-train collision cases wherein comparative, or contributory negligence, is more clearly distinguishable than in slippery floor cases. The appellant seeks to invoke the general rule that when reasonable minds cannot differ as to the plaintiff's negligence being at least equal to, if not greater than, the defendant's negligence, then the court should so hold as a matter of law, without submitting the question to a jury for determination. The parties have cited no Arkansas slip and fall cases on this point and we have found none. However, in the Wisconsin case of *Sturm* v. *Simpson's Garment Co.*, 271 Wis. 587, 74 N.W. 2d 137, the plaintiff slipped and fell on a snow covered vestibule floor and the court in that case said:

> "It is only in rare instances that this court has disturbed a jury's apportionment of negligence under our comparative negligence statute, sec. 331.045. We consider that under the facts of this case the comparison of negligence was peculiarly for the jury."

We hold likewise in the case at bar.

As to the appellant's third point, the plaintiff's instruction No. 13, as given by the trial court, is as follows:

> "If you decide for J. T. Ritchey on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following five elements of damages for personal injuries sustained which you find were proximately caused by the negligence of National Credit Corporation:
>
> First: The nature, extent, and duration of any injury and whether it is temporary or permanent.
>
> Second: The reasonable expense of any necessary medical care, treatment, and services received.
>
> Third: Any pain and suffering and mental anguish

experienced in the past and reasonably certain to be experienced in the future.

Fourth: The fair value of any currency that was lost.

Fifth: The value of any earnings or profits lost and the present value of any earnings or profits reasonable certain to be lost in the future.

Whether any of these five elements of damage has been proved by the evidence is for you to determine."

The defendant's requested instruction No. 19, which was refused by the court, is as follows:

"J. T. Ritchey claims damages from National Credit Corporation for loss of money and has the burden of proving each of five essential propositions:

First: That the bank bag contained money at the time plaintiff came to defendant's place of business.

Second: That the defendant found the bank bag, or with the exercise of ordinary care should have found the bank bag at the time of the alleged accident.

Third: That the defendant knew or reasonably should have known the contents of the bank bag.

Fourth: That the defendant was guilty of gross negligence in regard to caring for the bank bag.

Fifth: That said gross negligence was a proximate cause of plaintiff's loss of the money."

We are of the opinion that the trial court did not commit reversible error in giving plaintiff's instruction No. 13 and in refusing to give defendant's instruction No. 19 under the circumstances of this case. The defendant's proposed instruction No. 19 is clearly not a correct instruction. It is apparent from the record that the attorneys as well as the trial judge recognized the problem in con-

nection with plaintiff's instruction No. 13, so we are of the opinion that the problem will not arise again in the event of a new trial.

We find no merit in the appellant's fourth point. The defendant's instruction No. 20, which was refused by the court, is as follows:

> "The defendant is not an insurer of the safety of its customers or of personal property in possession of said customers, but it owes said customers only a duty to exercise ordinary care to keep its premises in a reasonably safe condition for the safety of their person and property. No presumption of negligence arises from the mere fact that a customer sustains a fall while in defendant's place of business."

The trial court gave as plaintiff's instruction No. 10 AMI instruction 1104 as follows:

> "In this case J. T. Ritchey was a business invitee upon the premises of National Credit Corporation. National Credit Corporation owed J. T. Ritchey a duty to use ordinary care to maintain the premises in a reasonably safe condition."

The trial court also gave AMI instruction 603 as the defendant's instruction No. 16 as follows:

> "The fact that an injury occurred is not, of itself, evidence of negligence on the part of anyone."

We are of the opinion that these two instructions given by the court sufficiently covered the points intended by the defendant's instruction No. 20 which was refused by the court.

Appellant's fifth point has given us considerable difficulty, but after sifting through considerable obiter dictum we reach the conclusion that this case must be reversed and remanded. In support of its motion for a new trial, National Credit offered in evidence the affidavit of one of the jurors to the effect that after the jury retired to

the jury room, they discussed the case for quite awhile and were unable to agree on a verdict; they then agreed that each member of the jury would write down the amount he felt Mr. Ritchey should receive and that these figures would be totaled and divided by 12; that the jurors agreed to be bound by the figure arrived at through this procedure; that this was the procedure followed in arriving at the verdict returned by the jury. In overruling the motion on this point, the trial court correctly noted that the courts frown generally on quotient verdicts and indicated that had the matter been called to the court's attention promptly after the trial, the court would not have hesitated to call each of the jurors back and allowed them to be questioned as to how they arrived at their verdict in order to determine whether they agreed to be bound by a quotient verdict. The trial court then stated as follows:

"What I am getting at is, the court doesn't know except by these offered affidavits as to whether they agreed to be bound by the verdict or not, and as we understand the statute, affidavits are not permissible for a juror to impeach his own verdict."

The trial court then held the affidavit inadmissible and denied the motion for a new trial.

Ark. Stat. Ann. § 43-2204 (Repl. 1964) provides as follows:

"A juror cannot be examined to establish a ground for a new trial; except it be to establish, as a ground for a new trial, that the verdict was made by lot."

This section was a part of the Criminal Code when it was adopted in 1868.

In the very early case of *Pleasants* v. *Heard,* 15 Ark. 403, (decided in 1854), in a civil suit for damages the jury awarded $620 to the plaintiff. One of the jurors stated in an affidavit that in assessing the damages, the jury agreed that each juror sould state the amount he was in favor of assessing, that the several amounts should be added up, and the product divided by the number of jurors and the

quotient should be taken as the damages to be assessed in favor of the plaintiff, and this was done. After citing cases *pro* and *con*, this court sustained the trial court in refusing a new trail based primarily on the proposition as stated by the court that:

> "Every reason of public policy, which would render it improper to permit a juror to impeach his own verdict, for the misconduct of himself, or his fellows, by affidavit, would apply, with increased force, to admissions or declarations made by him out of doors, after rendering the verdict."

The court went on to say that to permit such declarations to be proven by others would open a wide door to fraud.

In the 1881 case of *St. Louis, I.M. & S. R.R. Co.* v. *Cantrell*, 37 Ark. 519, the jury, in a personal injury suit, returned a verdict for the plaintiff in the amount of $800. The trial judge suggested to the jury they should not let $100 or $200 stand in the way of reaching a verdict and on motion for a new trial, the affidavit of a juror was offered which stated that he was in favor of only $500 and that the urging of the judge induced him to agree to the higher verdict. In holding that the affidavit of the juror should not have been allowed to be filed, this court said:

> ". . . the Statute expressly declares that:—'A juror cannot be examined to establish a ground for a new trial, except it be to establish, as a ground for a new trial, that the verdict was made by lot.' "

The 1886 case of *Ward* v. *Blackwood*, 48 Ark. 396, was a civil action for damages resulting in a jury verdict for the plaintiff in the amount of $1,800. In a motion for a new trial the defendant alleged misconduct of the jury in arriving at its verdict by lot. He filed the affidavits of three of the jurors stating that the jury differed as to the amount of the verdict, and finally by agreement, they wrote the amount of $2,000 on one slip of paper and the amount of $1,800 on another slip of paper, and the two slips of paper were then placed in a hat and one piece

of paper was drawn from the hat which contained the verdict of $1,800 on it. This court, without referring to the above statute, recited from the opinion in *Pleasants* v. *Heard*, supra, and then said:

"The rule laid down in *Pleasants* v. *Heard* has not been changed or repealed in civil cases, but on the contrary, in such cases remains in full force."

In the 1929 case of *Steed* v. *Wright,* 179 Ark. 812, 18 S.W. 2d 340, a civil suit for damages from an automobile accident resulted in a verdict for the plaintiff and the defendant urged reversal because the jury reached its verdict by lot. In passing on the contention this court siad:

"One juror was offered, whose testimony tended to show that the jury reached a quotient verdict, and not by lot. The juror offered to testify, but the court excluded it, that the jurors were all agreed that a verdict of some amount should be rendered, and that they wrote on separate slips of paper what they thought the total amount of the verdict should be, which was totaled and divided by twelve. The testimony of this witness does not show that they agreed in advance to be bound by such procedure, and were not bound, as the result following that procedure amounted to $4,600. Thereupon, after some dispute and argument, the jury finally agreed upon a $5,000 verdict. Under § 3220, C. & M. Digest, 'a juror cannot be examined to establish a ground for a new trial, except it be to establish, as a ground for a new trial, that the verdict was made by lot.'

Conceding that this statute applied to civil cases,* the evidence of the juror did not tend to establish that the verdict was determined by lot, under the rule announced in *Speer* v. *State,* 130 Ark. 357, 198 S.W. 113, and *Snow* v. *State,* 140 Ark. 7, 215 S. W. 3."

The footnote in this case appears as follows:

*"In *Ward* v. *Blackwood,* 48 Ark. 396, the court held

that this statute did not apply to civil cases. (Reporter)."

In the 1932 case of *St. Louis-San Francisco Ry. Co. v. Steele*, 185 Ark. 196, 46 S.W. 2d 628, a verdict by nine jurors was rendered for the plaintiff in a civil suit for damages and the defendant moved to set the verdict aside because it was arrived at by lot. Three of the jurors who did not sign the verdict testified that each of them was unwilling to render a verdict for the plaintiff; that the jurors who agreed on a verdict were in favor of returning a verdict for the plaintiff in different amounts; that these nine jurors set down the different amounts each was willing to allow and divide it by nine and the result was the amount of the verdict returned by the nine jurors signing it, in the amount of $1,737.50. The foreman of the jury testified that he had no recollection of the matter but if such suggestion was made, it was not carried out. He testified that the verdict was arrived at by the jurors continuing to lower and raise the individual amounts of what they thought the verdict should be. In that case this court said:

"In any event, their testimony tends to show it was a quotient verdict, and it could not be impeached by the testimony of any of the jurors, whether they agreed to it or not, as having been reached by lot. Citing *Speer* v. *State*, 130 Ark. 457, 198 S.W. 113; *Steed* v. *Wright*, 179 Ark. 812, 18 S. W. (2) 340; *Chess & Wymond Co.* v. *Wallis*, 134 Ark. 136, 203 S.W. 274."

This court then continued:

"A juror cannot be examined to establish a ground for a new trial, except it be to establish as such ground that the verdict was made by lot, and, although the law has been changed allowing a verdict to be returned by nine jurors, the prohibition of the statute against its being impeached by a juror still applies, although the juror so attempting to impeach it did not sign the verdict."

Under civil procedure, Ark. Stat. Ann. § 27-1901 (Repl. 1961) provides grounds for granting a new trial, two of the grounds being as follows:

"First. Irregularity in the proceedings of the court, jury or prevailing party, or any order of court or abuse of discretion, by which the party was prevented from having a fair trial.

Second. Misconduct of the jury or prevailing party."

Under criminal procedure, Ark. Stat. Ann. § 43-2203 (Repl. 1964), a new trial may be granted on seven grounds, the third one being, as follows:

"Where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors."

The above sections as well as § 43-2204, *supra*, were lifted verbatim from the civil and criminal codes approved July 22, 1868. In the preface to the original code, the code commissioners who prepared it make the following observation:

"As to the system of practice herein instituted, and the radical changes made in the former practice, it is not the purpose of those who have been engaged in the preparation of this Code to offer any observations. The General Assembly of the State has approved the system—a similar system is established in many of the States, and especially in the great States of New York, Kentucky and Alabama; and it is respectfully suggested to the profession that the law-reports and authorities of the States named are applicable here, and will be found useful if not, indeed, indispensable to the practitioner."

As indicated in the above cited cases, affidavits of jurors have heretofore been offered in civil cases in support of motions for new trials based on the contention that the verdict was arrived at by lot, but in each of these

cases it was determined that the verdict was a "quotient" verdict rather than a verdict by lot. However, in the 1955 case of *Scott* v. *Shairrick,* 225 Ark. 59, 279 S.W. 2d 39, a jury verdict was rendered in favor of the plaintiff in an automobile negligence case and the defendant attempted to have the verdict set aside because of misconduct on the part of the jury. The misconduct complained of concerned an allegation that one of the jurors inquired about the identity of the person in the courtroom and was advised that he was an insurance adjuster. The trial court properly refused to allow the defendant to call one of the jurors to testify at the hearing on the motion, but in affirming the judgment of the trial court, we said:

> "The trial court was of course correct. A juror cannot be examined to establish a ground for a new trial unless the alleged ground be that the verdict was arrived at by lot. See Ark. Stats., § 43-2204. Although this statute is digested under title of Criminal Procedure, it has many times been held to apply in civil cases."

We recognize the inherent dangers in permitting a juror to testify, by affidavit or otherwise, as to irregularities concerning the manner in which a jury arrives at its verdict, or as for that matter, to anything else that goes on inside the jury room during the course of deliberation. However, we also recognize the importance of a jury verdict reflecting the combined serious and honest deliberation of each member of the jury in attempting to arrive at a true and just verdict, for in no other way can the integrity of our jury system be protected and preserved. We see no good reason why § 43-2204, *supra,* should not apply in civil cases the same as in criminal cases.

Following the suggestion, *supra,* made by the commissioners who originally prepared our civil and criminal codes, we find that the Supreme Court of Kentucky, as recently as 1942, was confronted with the precise question on similar facts as is presented in the case at bar. In *Louisville & N. R. Co.* v. *Marshall's Adm'x,* 158 S. W. 2d 137, the plaintiff was awarded judgment on a jury verdict for $13,538.16. The defendant, in an amended mo-

tion for a new trial, charged misconduct on the part of the jury in arriving at its verdict. The defendant alleged that upon entering the jury room to consider their verdict, the jurors first determined the liability of the defendant; that they then entered into an agreement among themselves for each member to write down the amount he thought the verdict in favor of the plaintiff should be, and that the sum of these amounts would be divided by 12 and the quotient returned as the amount of the verdict. The defendant alleged that this allegation could be proven by members of the jury and it requested that the jurors be permitted to testify on that issue.

The Kentucky Criminal Code contained the same provision as our code, § 43-2204, *supra*. The Kentucky Court quoted at length from the text in 27 R. C. L., §§ 19 and 20 and held that a verdict rendered, as alleged in the motion, amounted to a verdict reached by lot and that a juror's testimony is admissible in evidence to prove such allegations in civil as well as criminal cases. We are of the opinion, therefore, and we so hold, that § 43-2204, *supra*, applies in civil cases as well as in criminal cases.

When each juror *first* arrives at the amount he thinks the verdict should be and makes known that amount to the other jurors, if the jury *then* adds the amounts and divides the sum by their number and agree on the result as the jury verdict, then the verdict so made is a *quotient* verdict. While we in no wise approve of such procedure, a verdict so made cannot be later impeached by the testimony of a member of such jury. Where such procedure is agreed to by the jury in *advance* before each juror determines and reveals what amount he thinks the verdict should be, a verdict so made is no longer a mere *quotient* verdict, but amounts to a verdict by *lot* and each juror is in a position to control the odds. We hold therefore, that where by prior agreement a quotient verdict is made by lot in civil as well as in criminal cases, the affidavits and testimony of the jurors may be admitted in evidence in proof of such fact, and when it is properly proven that a verdict was made by lot, the verdict should be set aside and a new trial granted.

We are of the opinion, therefore, that the trial court erred in concluding that he had no authority to accept the proffered affidavit or hear the testimony of the jurors in the case at bar, and that this case should be reversed and remanded to the trial court with instructions to accept the affidavits or hear testimony in connection with the appellant's petition for a new trial and grant or deny the motion as the proof may require.

Reversed and remanded.

HARRIS, C. J., not participating.

BROWN, J., concurs.