August F. SCHEPTMANN et al *v.*
F. Randall THORN and Marguerite THORN

80-264                                                      612 S.W. 2d 291

Supreme Court of Arkansas
Opinion delivered March 2, 1981

*Friday, Eldredge & Clark*, by: *Frederick S. Ursery*, for appellants.

*Guy Jones, Jr.*, for appellees.

GEORGE ROSE SMITH, Justice. On the night of October 22, 1976, Randall Thorn was seriously injured when the pickup truck in which he was a passenger left the highway and overturned. The driver, John W. Hunt, and another passenger were killed. Thorn and his wife brought this action for personal injuries and loss of consortium against Hunt's employer and Hunt's estate. There were many disputed questions of fact, including whether Hunt was acting in the scope of his employment, Thorn's status as a guest, willful and wanton negligence, comparative fault, assumption of risk, and the amount of damages.

The case was submitted on interrogatories, with the jury finding that Hunt was in the scope of his employment, that Thorn was not a guest and did not assume the risk, that Hunt was 80% at fault, and Thorn 20%, and that Thorn's damages were $200,000 and his wife's $50,000. Judgment was entered accordingly. For reversal the defendants argue that the trial judge responded so erroneously to the jury's inquiries during their deliberation that a mistrial should have been declared. The awards are also said to be excessive.

After the jurors had deliberated for some time they returned to the courtroom and asked for instructions "about the undecided decisions we have." The verdict forms (which the jurors had utilized as scratch paper) were handed to the judge, who went through them and made comments. The jury had not yet entered any amount of damages for Thorn or his wife. There was a majority of at least nine as to some of the interrogatories but not as to others.

We are concerned primarily with Interrogatory 4, by which the jury were to apportion the total fault between Hunt and Thorn. Toward the bottom of that form the jurors had each written their initials in a column, with a percentage figure for Hunt and another for Thorn, such as 50-50, 75-25, 90-10, etc. There is no indication that the jurors had added up the totals (which would have apportioned the fault as 73.33% in Hunt and 26.67% in Thorn). Some apportionment had actually been inserted in the blanks provided, but the judge did not announce it. Later those figures were so obliterated by the jury that the originals cannot be read. Eventually the jurors did arrive unanimously at the 80% fault for Hunt and 20% for Thorn.

The trial judge, in going through the verdict forms, announced whether or not there was at least a nine-vote majority for each interrogatory. Upon reaching Interrogatory 4 the judge's original comments were as follows:

Now on this next interrogatory, No. 4 ... we have twelve initials on this particular interrogatory with figures following the names which I'm going to assume are percentages. (Jurors indicate this is correct.)

This reminds me of a quotient verdict which is forbidden in the State of Arkansas; so I'm going to tell you we have no answer to Interrogatory 4.

After some further discussion the judge went on to say:

A quotient verdict is where everybody puts a figure in the hat and you add it up and divide by twelve, and the Supreme Court says that is not a verdict. And I feel that is what you all were starting to do or might have done.

Now, fine, it would be good to vote and let everybody say what they think it is and reach some kind of discussion on that, and come up with a decision you could be called upon and say — and probably will be called upon to say — is this your verdict? And say what is the figure and you say, "No, I didn't agree to that. I agreed to something else." We're out the window again.

Start with that, that's fine. But you all must hammer out a figure to which you can all agree, to which the apportionment of negligence is concerned. You have indicated that is what you're going to do, but you have as yet not done that, because nine of you can't agree on the answers to these things.

The court then gave the deadlocked jury instruction, AMI 2303, after which the following colloquy is pertinent:

Foreman Hall: Can we come up — on the percentage deals there if we hammer out a number between the twelve of us, suitable to all twelve of us, that all of us will stand behind, will that be suitable for the Court?

The Court: Yes, it will. And I want it to be everybody's verdict and agreement, not your verdict originally but one you have agreed on individually. That is what I mean.

Juror Wood: We can't take an average?

The Court: No. If the number you work out turns out to be an average, okay. But I want you to say, "That's my number," and I want you to stand behind it.

After the jury had retired again, defense counsel moved for a mistrial on the ground that the exchange between the court and the jurors with regard to a quotient verdict "is an invasion of the province of the jury at this point when they have not completed their deliberations." The principal point argued for reversal is the court's denial of that request for a mistrial.

No prejudicial error occurred. Where the jurors each submit a figure and agree in advance that the verdict will be one twelfth of the total, the verdict is by lot and cannot be upheld. If, however, there is no agreement in advance to be bound by the procedure, but the jurors do adopt the result, it is a quotient verdict and is valid. *National Credit Corp.* v. *Ritchey*, 252 Ark. 106, 477 S.W. 2d 488 (1972). Thus, although quotient verdicts are frowned upon, the trial judge was wrong in saying that they are forbidden in Arkansas. (It is, of course, most unlikely that the jurors had any clear idea of what is meant by a quotient verdict.)

Despite the misstatement, any possibility of a misunderstanding was eliminated by the judge's offhand but lucid explanation. He told the jurors that it would be good to let them all say what they thought and engage in discussion, but after that beginning they should hammer out an apportionment to which they could all agree. The foreman's last question shows that the court's explanation was clearly understood.

It is suggested that the procedure was seriously defective, because the final 80-20 apportionment of fault may not have been the exact ratio the jury first brought into the courtroom and then obliterated. Perhaps not, but it is impossible to say that the appellants were prejudiced by whatever change the jurors may have made. Even more important, any revision was achieved by unanimous vote after the jurors had received a clear explanation of what their goal should be and were therefore in a position to improve on their first conclusion by further deliberation. Thus the parties ultimately received the jurors' best collective judgment, the very purpose of a jury trial.

Second, it is argued that the trial judge's remarks to the jury had the effect of telling them the effect of their answers to the interrogatories, which would be contrary to our practice. *Wright* v. *Covey*, 233 Ark. 798, 349 S.W. 2d 344, 90 A.L.R. 2d 1033 (1961). We quote the challenged remarks, made in response to a juror's inquiry about whether all the interrogatories had to be answered:

> The Court: Depending upon what your answers are, you would not, under one set of facts, have to answer every interrogatory. If your answers to some of the interrogatories are different, then you may have to answer each and every one of them, and the way you have started off answering these interrogatories I will tell you you will probably have to answer every one of them.

We are not persuaded that the court's remarks told the jury the effect of their answers upon the parties' ultimate liability. Of course the jurors, as practical persons, knew that the interrogatories were not propounded idly, that they were intended to have some effect upon the outcome of the lawsuit. But the court spoke only in generalities, so much so that we are wholly unable to see how the jurors could have derived any usable information from the remarks in question.

Third, we do not find the $200,000 award to Randall Thorn to be excessive. At the time of his injury he was 46, active and vigorous, with a substantial income from construction work and from farming. His injuries affected his physical and nervous condition to such an extent as to be totally disabling. The testimony of an expert witness, if accepted by the jury, would have supported a somewhat larger award. The amount of the verdict does not shock the conscience of the court or suggest passion or prejudice on the part of the jury.

On the other hand, most of Mrs. Thorn's pertinent testimony related to the additional farm work she must do because of her husband's disability. We have often reduced consortium awards to a wife because the jury evidently

considered such matters, which not only are included in the husband's recovery but also are not properly embraced within the concept of consortium. *White* v. *Mitchell*, 263 Ark. 787, 568 S.W. 2d 216 (1978); *Scott* v. *Jansson*, 257 Ark. 410, 516 S.W. 2d 589 (1974); *Ark. La. Gas Co.* v. *Strickland*, 238 Ark. 284, 379 S.W. 2d 280 (1964). Here, construing the testimony most favorably to the appellees, we cannot sustain an award of more than $25,000 for loss of consortium.

Affirmed as to Randall Thorn. Affirmed as to Mrs. Thorn upon condition that a remittitur of $25,000 be filed within 17 calendar days; otherwise reversed and remanded as to her cause of action.

HICKMAN, J., dissents.

ADKISSON, C.J., and HAYS, J., dissent in part.

DARRELL HICKMAN, Justice, dissenting. My disagreement with the majority in this case is fundamental. It is my judgment that the trial court made two mistakes which so substantially affected the rights of the appellants that a new trial should be ordered.

The trial judge found himself in the unenviable position of having a confused jury. The jury returned to the courtroom and asked the court for assistance regarding some unanswered interrogatories. Four interrogatories had been answered. One interrogatory, No. 4, apportioned the fault between the parties and this interrogatory had been answered. However, on that same page there were figures and initials which indicated that the jurors had individually written down what percentage of negligence should be attributed to the two parties. The court wrongfully concluded that this was an invalid verdict under Arkansas law and told them they would have to change it.

I have attached Interrogatory No. 4 to this dissent. The judge wrongly concluded that this was a quotient verdict which he considered illegal in the State of Arkansas and told the jury that Interrogatory No. 4 would have to be changed. The interrogatory was then changed.

The jury had already filled in the percentages of negligence and this was a valid determination because quotient verdicts in Arkansas *are not illegal*. Only a verdict which is determined by lot is illegal. The difference is that in a quotient verdict the jurors give their opinion of the amount that should be used in a verdict and they make this amount known to the other jurors. The amounts are added and the total divided by the number of jurors. If the jurors agree to the resulting amount, this becomes a quotient verdict. However, if the jurors agree in *advance* that they will be bound by these figures, then it is a verdict by lot and it is prohibited. *National Credit Corp.* v. *Ritchey*, 252 Ark. 106, 477 S.W. 2d 488 (1972); *Connelly* v. *State*, 234 Ark. 143, 350 S.W. 2d 298 (1961); *Lin Mfg. Co. of Ark.* v. *Courson*, 246 Ark. 5, 436 S.W. 2d 472 (1969).

A quotient verdict cannot be impeached and, therefore, this verdict, Interrogatory No. 4, was a valid finding by the jury. *National Credit Corp.* v. *Ritchey, supra.*

We do not know what the original findings of the jurors were but we do know that Interrogatory No. 4 was improperly ordered changed. What we have is a lawful verdict agreed upon by a jury and subsequently changed by the trial court. It ought to be obvious that this is reversible error. *St. Louis Southwestern Ry. Co.* v. *Aydelott*, 128 Ark. 479, 194 S.W. 873 (1917). The concept that a trial judge must manifest impartiality in the conduct of a trial was recently restated by this court in *Kitchen* v. *State*, 271 Ark. 1, 607 S.W. 2d 345 (1980). This, added to the fact that the court made an improper remark to the jury when one juror asked if they could just throw out one interrogatory or ignore it, the judge replied; "... the way you have started off answering these interrogatories, I will tell you you will probably have to answer every one of them." At this time none of the interrogatories regarding damages had been filled in by the jury. I also consider this error.

I am authorized to state that Justice Hays joins me in this portion of the dissent.

My other disagreement is with the majority's reduction

of the award for consortium. Damages in this regard were set by the jury at $50,000.00 and this court has arbitrarily, and in my judgment improperly, reduced the damages to $25,000.00. If there was adequate evidence to support $25,000.00, there is adequate evidence to support $50,000.00. I am authorized to state Chief Justice Adkisson joins me in this portion of the dissent.

Thorn v. Scheppmann
Faulkner Circuit    . CIV 77-310

INTERROGATORY NO. 4

Using 100% to represent the total responsibility for the occurrence and any injuries or damages resulting from it, apportion the fault between the parties whom you have found to be responsible.

Answer:          John W. Hunt          ☒ 40 %

                 Randall Thorn         ☒ 20 %

                 Total                 100%

By the term "fault" in the above interrogatory, I mean any act, omission, conduct or risk assumed which you find proximately caused any damages sustained by Randall Thorn.

<u>Bruce Hall</u>
Foreman

Hun'. Thorn
L.C. 50    50
H.F. 75    25
K.B. 50    50
      0    .D 8
   7 5     20
E.N.2. 50  50
E.N.  60   40
WO B. 100  0
E.H-100    0
E.B  80    20
E.W. 100   0
D.H.  90   10

STEELE HAYS, Justice, dissenting. I believe that there is enough uncertainty in how the jury reached its final verdict to justify remanding the case for a new trial. In the discussions over Interrogatory No. 4, the trial judge instructed the jury that its initial completion of the interrogatory was improper under our law, being a quotient verdict. It is conceded that this was an error on his part. While nine jurors had not yet agreed on Interrogatory No. 4, it is evident that the interrogatory was not improper and that the jury had filled in the percentages of fault on the part of Randall Thorn and John Hunt. What these percentages were is not revealed, as they were later obliterated by the jury, but the jury was told by the judge that its treatment of the interrogatory was "forbidden." They were told to return to the jury room with the instruction that their verdict should be the verdict of all the jurors, but "not your original verdict."

The majority reasons that the appellant was not prejudiced by this development. But the answer to that lies in the interrogatory itself, as the original completion shows that four of the jurors had determined that Randall Thorn's negligence was equal to the negligence of John Hunt and in that posture the plaintiff could not have recovered any amount. Thus, the jury was erroneously instructed that they must undo what they have done and any verdict returned thereafter is unreliable.

The court's instruction to the jury at this stage of the proceedings, i.e., after deliberations have begun, are the most sensitive stage of the trial process and when those instructions are material and admittedly erroneous, a new trial should be ordered.