Robert Dale GARNER *v.* Harold FINCH et al

80-252                                          612 S.W. 2d 304

Supreme Court of Arkansas
Opinion delivered March 9, 1981

*W. B. Howard* and *Frierson, Walker, Snellgrove & Laser*, by: *Mark Ledbetter*, for appellant.

*Tom B. Smith* and *Penix, Penix & Mixon*, for appellees.

FRANK HOLT, Justice. This appeal results from the trial court's granting appellees' motion for a new trial following a jury verdict for appellant in the amount of $55,263.00 based upon his claim for personal injuries. Appellant challenges the correctness of that ruling. We affirm.

The trial court is vested with a wide latitude of discretion in acting on a motion for a mistrial or a new trial and will not be reversed on appeal absent a manifest abuse of discretion. *General Motors Corp. et al* v. *Tate*, 257 Ark. 347, 516 S.W. 2d 602 (1974); and *Dickerson Construction Co.* v. *Dozier*, 266 Ark. 345, 584 S.W. 2d 36 (1979). The showing that a trial judge has abused his discretion must be stronger when a new trial has been granted than when it has been denied, as the beneficiary of the verdict set aside has less basis for a claim of prejudice than does the unsuccessful movant for a new trial. *Security Insurance* v. *Owen*, 255 Ark. 526, 501 S.W. 2d 229 (1973).

Appellant was employed by appellee Finch as a farm employee when he accidentally suffered an amputation of the lower portion of his left leg by a rotating auger in a grain cart, which was manufactured by appellees Shaw and House. After a three day trial, the jury retired to deliberate and answer seven interrogatories. The trial judge instructed the jury that only the foreman should sign an interrogatory if it was unanimous; if not, nine or more jurors must agree on the answer to any of the interrogatories and those agreeing must sign. The instructions were then furnished to the jury for its use. The first time the jury returned the foreman advised the court that the jury had reached a verdict; the answers to the first six interrogatories were unanimous; and the seventh interrogatory was signed by nine jurors. However, upon questioning the jury, the court determined that the answers to some were not unanimous. Consequently, the court sent the jury back to further deliberate with instructions again as to how each interrogatory should be

signed. The jury returned a few minutes later to ask a question. The foreman stated the jury was "really confused" as to interrogatory #5 involving assumption of risk and "[w]e think he [appellant] is partially to blame for this but we took that into consideration when we awarded the amount of money that was to be paid to him. Now, we didn't know whether we answered that question yes or answered it no." The trial court attempted to explain to the jury that its function was to answer that interrogatory yes or no, apportion the percentage of fault among the parties (interrogatory #6) and find the total amount of damages the appellant had sustained (interrogatory #7). The foreman expressed "confusion" with the court's attempted clarification. The court observed that the foreman's understanding would be appropriate under a general verdict form, however, not appropriate to an interrogatory form of verdict. The court continued: "You must enter the amount which you feel he is entitled to recover. Correctly, it should be the total amount that you feel he has sustained. The total amount of his damages that you find that he has sustained as a result of any injury which you find was proximately caused by the liability or negligence of the parties to whom you find at fault and apportion their degree." A juror then remarked: "[T]he point we are trying to get to is the percentage of fault ..." The court responded it was the jury's function to apportion the fault of liability of each party and the jury was not to diminish or deduct anything from the total damages. The jury again retired. Thereupon, appellees complained to the court that the proper method of answering the jurors' questions would be to tell the jury that all the interrogatories must be answered and if they desired any clarification on the assumption of risk they could simply reread the instructions (which had been furnished them). Further, the court's remarks went beyond answering questions and indicated to the jury that it could find more damages than the actual amount the appellant was entitled to. The court overruled appellees' motion for a mistrial. The jury returned shortly and reported that they had reached a verdict. The court, after examining the interrogatories, again sent the jury back, stating that, in view of interrogatories 4 (as to appellant's negligence) and 5 (appellant's assumption of risk), he must return interrogatory 6 (percentage of responsibility among

the parties) to the jury for further deliberation. (At the hearing on the motions for a new trial, the judge noted the jury had answered that appellant was negligent and had assumed the risk, but it had apportioned "0%" negligence to him.) Defense counsel again moved for a mistrial because of the jury's confusion about their function and "at this stage it is anybody's guess as to what they will do and just be conjecture and be forcing a result on their part." Again, appellees' motion was denied. A short time later the jury returned with their final answers to the interrogatories, none of which were unanimous. All appellees were found negligent, in varying degrees, and appellant 5% negligent. Appellant was awarded damages of $55,263.00 (an increase of approximately 5% over their first figure).

Subsequently, the appellees filed their motions for a new trial, reasserting, *inter alia*, their motions for mistrial during the trial proceedings. The trial judge, after hearing arguments, granted a new trial, stating that he should have granted the defendants' motions for a mistrial during the proceedings. In doing so, the court noted that he was not considering, nor had he read, an affidavit of six of the jurors concerning matters which occurred during their deliberations. The court was correct inasmuch as such an affidavit is improper under Arkansas law. See Uniform Rules of Evidence, Rule 606 (b). The court also properly excluded from consideration statements made by a local attorney about reports made to him by some of the jurors. The court then stated:

> [I]n the interest of justice and a fair and impartial trial the Court is granting the motion and ordering a new trial in the case so that all parties will have an adequate opportunity to correct any — so it will be beyond the question of suspect as I fear and find this verdict is open to.

The court made a specific finding "that it should have granted certain defense motions for a mistrial during the jury's deliberations in this matter."

In the granting or denying of a motion for mistrial, we

give due consideration to the fact the trial judge, having personally observed the entire proceedings, is in a better position than we to evaluate the merits of the motion. When we consider all the circumstances during the trial proceedings, we cannot say that appellant has sufficiently met his burden of demonstrating the trial judge manifestly abused the wide latitude of discretion allowed him by setting aside the jury's verdict.

Affirmed.

ADKISSON, CJ., and PURTLE, J., dissent.

JOHN I. PURTLE, Justice, dissenting. I respectfully dissent from the majority opinion in this case primarily upon the reasoning we used in the recent case of *Scheptmann et al* v. *Thorn*, 272 Ark. 70, 612 S.W. 2d 291 (1981). Both cases are strikingly similar, the chief difference being that in the present case the trial court granted a new trial and in the *Scheptmann* case a new trial was denied.

In both cases the matter was submitted upon interrogatories and in both cases the central question revolved around the percentage of negligence or total injuries suffered by the plaintiff. In both cases the trial judges answered the inquiry of the jury in a manner which could not possibly be misleading, in my opinion. In *Scheptmann et al* v. *Thorn*, supra, we stated:

> . . . But the court spoke only in generalities, so much so that we are wholly unable to see how the jurors could have derived any usable information from the remarks in question.

The cases are strikingly similar in a number of respects not previously mentioned. After the jury had returned and announced their confusion in the present case, the court explained the interrogatories and sent them back to deliberate. While they were out, the opposing party moved for a mistrial. The mistrial was denied. In *Scheptmann*, supra, after the trial court explained the interrogatories the jury went back to consider them further. During the time they

were out the opposing attorney moved for a mistrial. In one case the judge refused to set it aside, and we upheld him. In the other case the judge at first refused to set it aside but later did set the verdict aside and we have now upheld him. It may be said that this is the result of allowing trial courts a great amount of discretion in handling the trial. I agree that trial courts should be given wide latitude in conducting trial procedures. However, it appears to me that we have in one case placed our stamp of approval on a judge explaining the interrogatories to the jurors and in the other case we have stated that the judge should not explain the interrogatories to the jurors.

In my opinion, the trial judge was closer to the factual situation and the parties at the time he refused to grant the mistrial before the jury had returned with their verdict than he was several weeks later when he set it aside. It is only logical that the matters would have been more prominent in his mind during the trial than they were after outside attorneys had meddled in the matter and jurors had submitted statements. Although the court did not consider these matters, it seems to me it would be nearly impossible not to be aware of the outside activities of another attorney and the improper conduct of obtaining statements from jurors. To affirm this decision will likely encourage others to bring to bear all sorts of pressure on trial judges when the results of a trial are unfavorable to them.

I would reinstate the jury verdict in this case.