The Honorable Jay Bradford State Representative P.O. Box 8367 Pine Bluff, AR 71611-8367
Dear Representative Bradford:
I am writing in response to your request for my opinion on the following questions:
 1. What is the penalty for a violation of A.C.A. 14-42-107, which prohibits city council members, officials and employees from doing business with the city unless specifically provided for by ordinance?
 2. Does the Attorney General's analysis in Op. 87-266 still hold, or do the penalty provisions of the Arkansas Criminal Code now apply to make it a "violation" punishable by a $100 fine and double any monetary gain as provided in A.C.A. 5-4-201?
RESPONSE
With respect to your first question, assuming a complaint alleged no violation other than a breach of A.C.A. § 14-42-407, I believe the only available "penalty" would be the civil remedies set forth in the Local Fiscal Management Responsibility Act, A.C.A. § 14-77-101 et seq., which was enacted pursuant to Acts 1991, No. 724. However, the separate possibility exists that a breach of A.C.A. § 14-42-107 might, depending on the facts, also constitute a violation of the ethics and conflict of interest provisions set forth at A.C.A. § 21-8-304, in which case the proscribed conduct would constitute a Class B misdemeanor pursuant to A.C.A. § 21-8-302. Again depending upon the facts, the proscribed conduct might further amount to the separate criminal offense of abuse of office as defined at A.C.A. § 5-52-107, which is likewise classified as a Class B misdemeanor. I should stress, however, that liability under these criminal statutes must be independently established, since conduct in breach of A.C.A. § 14-42-407 does not necessarily entail any corollary criminal liability. A conviction under either of the above referenced criminal statutes would support removing an alderman from office pursuant to A.C.A. § 16-118-105 if the misdemeanor were deemed to involve deceitfulness, untruthfulness, or falsification amounting to an "infamous crime" that would mandate disqualification under Ark. Const. art 5, § 9. With respect to your second question, I believe the analysis of the predecessor statute to A.C.A. § 14-42-107 offered in Ark. Op. Att'y Gen. No. 87-266 is correct in concluding that the statute does not authorize any criminal sanctions. This conclusion is likewise correct as to A.C.A. § 14-42-107. However, since the enactment of the Local Fiscal Management Responsibility Act in 1991, my predecessor's conclusion that no civil remedies exist is no longer correct.
Question 1: What is the penalty for a violation of A.C.A. 14-42-107,which prohibits city council members, officials and employees from doingbusiness with the city unless specifically provided for by ordinance?
The proscription referenced in your request is set forth at A.C.A. §14-42-107(b) (Supp. 2003), which provides:
 (1) No alderman, council member, official, or municipal employee shall be interested, directly or indirectly, in the profits of any contract for furnishing supplies, equipment, or services to the municipality unless the governing body of the city has enacted an ordinance specifically permitting aldermen, council members, officials, or municipal employees to conduct business with the city and prescribing the extent of this authority.
 (2) The prohibition prescribed in this subsection shall not apply to contracts for furnishing supplies, equipment, or services to be performed for a municipality by a corporation in which no alderman, council member, official, or municipal employee holds any executive or managerial office or by a corporation in which a controlling interest is held by stockholders who are not aldermen or council members.
One available penalty for a violation of this statute is set forth in the Local Fiscal Management Responsibility Act (the "Act"), A.C.A. §14-77-101 et seq. (Repl. 1998), which was enacted pursuant to Acts1991, No. 724. Subsection 14-77-102(5)(B)(i) identifies A.C.A. § 14-42-107
as a "fiscal responsibility and management law" subject to the Act. Section14-77-103 of the Act obligates "the executive officer of the political subdivision," upon being notified of "an alleged violation" of a fiscal responsibility and management law, to investigate. If he determines that the allegations have merit, "the facts and circumstances relating to a violation and any corrective or remedial action shall be documented and placed in the personnel files of the public officer or employee involved in the violation." A.C.A. § 14-77-103(c).
Section 14-77-105 provides:
 The public officer or employee violating a fiscal responsibility and management law shall be given not more than thirty (30) days from the date of notification to effect corrective or remedial action recommended by the executive director of the political subdivision. Failure to make corrective or remedial action within thirty (30) days after notification creates the rebuttable presumption that the violation was committed knowingly.
Section 14-77-106 provides that the executive officer of a political subdivision or the Legislative Joint Auditing Committee may request the appropriate prosecuting attorney to investigate and, if appropriate, to initiate a civil action under the Act.
Section 14-77-108 provides that if a court determines that a public officer or employee has "knowingly violated the provisions of the fiscal responsibility and management laws," the court may award damages and impose a civil penalty of no less than $100 and no more than $1,000 for each violation.
Finally, A.C.A. § 14-77-111 provides:
 The provisions of this chapter are supplemental to any other remedies available by law. In addition, the provisions of this chapter do not limit or diminish any civil rights or administrative procedures available to any public officer or employee or political subdivision.
As this statute suggests, the remedies set forth in the Act do not preclude pursuing any other available criminal or civil cause of action.
With respect to these alternative remedies, depending upon the facts, a violation of A.C.A. § 14-42-107 may also constitute a violation of A.C.A. § 21-8-304 (Supp. 2003), which provides:
 (a) No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemption for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that is not available to others except as may be otherwise provided by law.
 (b) No public official or state employee shall accept employment or engage in any public or professional activity while serving as a public official which he or she might reasonably expect would require or induce him or her to disclose any information acquired by him or her by reason of his or her official position which is declared by law or regulation to be confidential.
 (c) No public official or state employee shall disclose any such information gained by reason of his or her position, nor shall he or she otherwise use such information for his or her personal gain or benefit.
This office has previously opined that an alderman qualifies as a "public official" subject to the provisions of this statute. See Ark. Ops. Att'y Gen. Nos. 95-096 and 94-283. But see A.C.A. § 6-43-114 (Repl. 1999) (describing A.C.A. § 21-8-304 as "applicable to state agencies and state employees generally" and extending it application to the Arkansas School for the Blind and the Arkansas School for the Deaf); Ark. Op. Att'y Gen. No. 90-132 ("Although it is a little unclear, this provision may be applicable to city councilmen, and under certain facts, could give rise to an unlawful conflict of interest.").
Subsection 21-8-302 of the Code (Repl. 1996) classifies as a Class B misdemeanor any violation of A.C.A. § 21-8-304. Section 21-8-303 (Supp. 2003) locates enforcement authority initially in the prosecuting attorney's office or the Arkansas Ethics Commission and authorizes any private citizen to enforce compliance through an action in circuit court if the prosecuting attorney fails to act. The permissible range of penalties for a Class B misdemeanor is set forth at A.C.A. §§ 5-4-201 and -401 (Repl. 1999).
Under certain circumstances, a violation of A.C.A. § 14-42-107 might further amount to an abuse of office, which the Code defines at A.C.A. §5-52-107(a) (Repl. 1997) as follows:
 A person commits the offense of abuse of office if, being a public servant and with the purpose of benefiting in a pecuniary fashion himself or another person or of harming another person, he knowingly commits an unauthorized act which purports to be an act of his office or omits to perform a duty imposed on him by law or clearly inherent in the nature of his office.
Subsection (b) of this statute defines abuse of office as a Class B misdemeanor. In my opinion, an alderman would clearly qualify as a "public servant" subject to this statute. Subsection 5-1-102(16)(A) (Supp. 2003) defines a "public servant" as "[a]ny officer or employee of this state or of any political subdivision thereof[.]"
Finally, in addition to the criminal penalties available upon conviction of a Class B misdemeanor, a conviction might further support an action to remove the alderman pursuant to the usurpation statute, A.C.A. §16-118-105 (Supp. 2003), which provides in pertinent part:
 (a) In lieu of the writs of scire facias and quo warranto, or of information in the nature of a quo warranto, actions may be brought to vacate or repeal charters and prevent the usurpation of an office or franchise.
* * *
 (2) A person who continues to exercise an office after having committed an act, or omitted to do an act, of which the commission or omission, by law, created a forfeiture of his or her office, shall be subject to be proceeded against for a usurpation thereof.
* * *
 (3)(B) For usurpation of other than county offices or franchises, the action by the state shall be instituted and prosecuted by the Attorney General.
 (4)(A)(i) When a person is adjudged to have usurped an office or franchise, he or she shall be deprived thereof by the judgment of the court, and the person adjudged entitled thereto shall be reinstated in the office or franchise.
* * *
 (B) The court shall have power to enforce its judgment by causing the books and papers, and all other things pertaining to the office or franchise, to be surrendered by the usurper, and by preventing him or her from further exercising or using the office or franchise, and may enforce its orders by fine and imprisonment until obeyed.
 (5) When the usurper has received fees and emoluments arising from the office or franchise, he or she shall be liable therefor to the person entitled thereto, who may claim the fees and emoluments in the action brought to deprive him or her of the office or franchise or in a separate action. If no one is entitled to the office or franchise, the fees and emoluments may be recovered by the state and paid into the public treasury.
With respect to what varieties of conduct might support removing an official pursuant to this statute, one of my predecessors remarked in Ark. Op. Att'y Gen. No. 2002-098:
 It is clear in Arkansas that any felony is an "infamous crime" sufficient to disqualify a person under article 5, § 9. Powers v. Bryant, 309 Ark. 568, 832 S.W.2d 232 (1992) (stating that "[t]his constitutional provision prohibits convicted felons from `holding any office or trust or profit in this state.'"). See also, A.C.A. § 16-90-112 (b). In my opinion, additionally, article 5, § 9 renders ineligible for public office any person convicted of a misdemeanor, if the misdemeanor is one that involves deceitfulness, untruthfulness, or falsification, because in these cases the misdemeanor will constitute an "infamous crime." See Op. Att'y. Gen. 94-106 for a more complete discussion of this issue.
I agree completely with this summary of the law.
Question 2: Does your analysis in Opinion No. 87-266 still hold, or dothe penalty provisions of the Arkansas Criminal Code now apply to make ita "violation" punishable by a $100 fine and double any monetary gain asprovided in A.C.A. 5-4-201?
In my opinion, my predecessor's analysis in Ark. Op. Att'y Gen. No.87-266 accurately states the law not only with respect to the superseded Ark. Stat. Ann. § 19-909, but also with respect to the successor statute, A.C.A. § 14-42-107(b), inasmuch as no criminal penalties are available under either statute. However, as noted in my response to your first question, after my predecessor issued his opinion, the legislature enacted Acts 1991, No. 724, the Local Fiscal Management Responsibility Act (the "Act"), which adopted various civil remedies unavailable in 1987.
At issue in my predecessor's opinion was the following question: "Is 19-909 a criminal provision subject to enforcement by the State; and, if so, what penalty provisions apply?" The referenced Ark. Stat. Ann. 19-909 (Supp. 1985), the predecessor statute to A.C.A. § 14-42-107, provided:
 No alderman or member of any council shall, during the term for which he shall have been elected, or one (1) year thereafter, be appointed to any municipal office which was created or the emoluments of which shall have been increased during the time for which he shall have been elected. No such alderman or member shall be appointed to any municipal office except in cases provided for in this Act, during the time for which he may have been elected. No alderman or member of a city council shall be interested, directly or indirectly, in the profits of any contract for the furnishing of supplies, equipment or services to the municipality unless the governing body of the city shall have enacted an ordinance specifically permitting aldermen or members of the council to conduct business with the city and prescribing the extent of such authority. Provided, the prohibition prescribed herein shall not apply to contracts for the furnishing of supplies, equipment of [sic: "or"] services to be performed for a municipality by a corporation in which no alderman or member of the council holds any executive or managerial office, or by a corporation in which a controlling interest is held by stockholders who are not aldermen or members of the council.
My predecessor offered the following analysis:
 While 19-909 clearly prohibits the conduct contemplated therein, it does not equate violation of the provision with any criminal offense nor does it set forth a penalty for failure to comply. It must therefore be determined, in response to your first question, whether a criminal violation can be implied, thus subjecting the violator to some penalty.
 It is an established maxim that penal provisions are strictly construed and that "[n]othing will be taken as intended which is not clearly expressed and all doubts must be resolved in favor of the defendant." Bennett v. State, 252 Ark. 128, 477 S.W.2d 492 (1972), citing Shepherd v. State, 246 Ark. 159, 439 S.W.2d 627 (1969). This precept leads to the conclusion that 19-909 may not be deemed by implication to constitute a criminal provision. It has been acknowledged, furthermore, that an act may be prohibited by law and yet no penalty imposed. C.J.S. Criminal Law 37. It is my opinion, therefore, that a court would be unwilling to impose a civil or criminal penalty pursuant to 19-909. Ark. Stat. Ann. 41-2707 (Repl. 1977) should, however, be noted in this regard. Conduct in violation of 19-909 may, depending upon the particular facts involved, constitute "abuse of office" under 41-2707 [now A.C.A. § 5-52-107(a)] which is a class B misdemeanor. It seems clear that aldermen or members of the city council are "public servants" according to the definition set forth in Ark. Stat. Ann. 41-115(16).
I agree with my predecessor's analysis and believe it applies in all respects to the current A.C.A. § 14-42-107(b), subject only to the qualification that the Act now affords civil penalties unavailable in 1987.
I am struck by the fact that you have enclosed in quotation marks the term "violation," apparently to suggest that breaching the terms of A.C.A. § 14-42-107(b) might constitute a "violation" under the following provision of the criminal code:
 (a) An offense is a violation if it is so designated by this code or by a statute not a part of this code.
 (b) Regardless of any designation appearing in the statute defining an offense, an offense is a violation for purposes of this code if the statute defining the offense provides that no sentence other than a fine, or fine or forfeiture, or civil penalty is authorized upon conviction.
A.C.A. § 5-1-108, as enacted by Acts 1975, No. 280, § 114. The legislature enacted this statute before my predecessor issued Opinion No. 87-266 in 1987, and it consequently supports no new perspective on the issue addressed in my predecessor's opinion. As was the case with Ark. Stat. Ann. § 19-909, nothing in A.C.A. § 14-42-107(b) or any other provision of the code designates a breach of the latter statute a criminal violation. It remains the case that I cannot infer a legislative intent to criminalize particular conduct; I can interpret a statute as penal in nature only if the legislature has expressly criminalized the proscribed conduct. Accordingly, I believe that the penalties for "violations" and "offenses" set forth in A.C.A. § 5-4-201 (Repl. 1997) would not be available as remedies in an action alleging a breach of the obligations set forth in A.C.A. § 14-42-107(b).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh