## ARKANSAS LOUISIANA GAS COMPANY
and Mickey GARRETT *v.* Carlous H. MORGAN and
Geraldine G. Morgan

73-244                                              506 S.W. 2d 560

Opinion delivered March 18, 1974

*Bridges, Young, Matthews & Davis,* for appellants.

*Elrod and Beshear; Brown, Compton & Prewett,* by: *Robert C. Compton,* for appellees.

CONLEY BYRD, Justice. This litigation arises out of a rear-end automobile collision. The jury verdict, signed by nine jurors, awarded damages to appellee Carlous H. Morgan in the amount of $50,000 and in favor of appellee Geraldine G. Morgan in the amount of $5,000 for loss of consortium. For reversal appellants, Arkansas Louisiana Gas Company and Mickey Garrett contend:

> "I. The court should have granted a mistrial because one of the nine jurors could not read and write, and
>
> II. The verdict of the jury is excessive."

POINT I. The record shows that Archie Lee McGehee, one of the nine jurors who signed the verdict, signed with an "X". Appellants then questioned Mr. McGehee and found he could not read and write. Appellants' counsel then ascertained that the trial court in another previous trial had determined that the juror could not read and write. Other questions showed that Mr. McGehee was a qualified voter and that he held a regular job with the Arkansas State Highway Commission. In overruling the appellants' motion for a mistrial, the trial court found that Mr. McGehee was a good juror and stated that he would be used on the next case unless one of the parties struck him.

Appellants admit that they did not voir dire Mr. McGehee on the subject of his ability to read and write, but argue that the trial court should have given the attorneys the benefit of the knowledge he had from the prior selection of juries by informing them that one member of the jury panel was incapable of making mathematical calculations. We find no merit in appellant's position for two reasons—*i.e.,* (1) the showing that the juror could not read and write does not necessarily mean that the juror could not do mathematical calculations, and (2) the matter is controlled by Ark. Stat. Ann. §§ 39-102(d) and 39-106 (Supp. 1973).

Ark. Stat. Ann. § 39-102(d) provides:

"The following are disqualified to act as grand or petit jurors: . . . (d) Persons who are unable to read or write the English language, except that the Circuit Judge may, in the exercise of his discretion, waive these requirements when said persons are otherwise found to be capable of performing the duties of jurors."

Ark. Stat. Ann. § 39-106 provides:

"No verdict or indictment shall be void or voidable because any juror shall fail to possess any of the qualifications required in this Act [§§ 39-101—39-108, 39-201—39-220] unless a juror shall knowingly answer falsely any question on voir dire relating to his qualifications propounded by the court or counsel in any cause. A juror who shall knowingly fail to respond

audibly or otherwise as is required by the circumstances to make his position known to the court or counsel in response to any question propounded by the court or counsel, the answer to which would reveal a disqualification on the part of such juror, shall be deemed to have answered falsely."

Since the law permits a trial judge to waive the disqualification arising from the inability to read and write, we fail to see why counsel should be entitled to rely upon the trial court to disqualify such persons from the jury panel.

POINT II. The record shows that Carlous H. Morgan was 51 years of age at the time of the collision in December of 1971. He was a trained welder and automobile mechanic who at the time of the collision had been employed on an insurance debit for Life & Casualty Insurance Company of Nashville, Tennessee, for 11 1/2 years. His income in that occupation came both from collections and sales. His income dropped from some $10,800 in 1971 to approximately $8,800 in 1972. As a result of the injuries received his wife quit her employment and at the time of trial was doing the driving for him. According to the wife's testimony her income was supplemental to her husband's to begin with so she quit her job to help out with his earnings.

Following the collision Mr. Morgan went to Dr. Don E. Howard's office. Dr. Howard caused some X-rays to be made and told him to return in three or four days. When Mr. Morgan returned, Dr. Howard referred him to Dr. Shuffield in Little Rock.

Dr. Elvin Shuffield testified that he examined the X-rays and found that Mr. Morgan had a rather marked degeneration and narrowing of the interspaces between the fifth cervical and sixth cervical vertebra and also between the seventh cervical and first thoracic vertebra. The lower half of Mr. Morgan's neck demonstrated that there was degeneration taking place. Dr. Shuffield was of the opinion that Mr. Morgan had had previous trouble in his neck and the recent injury had caused a hypertension strain on his cervical spine which had aggravated the previous existing condition. He also found evidence of nerve root pressure to the left ulnar

nerve. Dr. Shuffield told Mr. Morgan that he would probably continue to have aches and pains, particularly if he worked in awkward positions. He also stated that weather changes would cause more aches and pains. Dr. Shuffield concluded that Mr. Morgan had some permanent partial disability which he placed at 10 per cent to the body as a whole. On redirect he stated that the nerve root pressure on the left ulnar nerve had reached its maximum improvement.

The testimony of Mr. and Mrs. Morgan shows that prior to the collision Mr. Morgan, in addition to his insurance debit, repaired the family automobiles, mowed the yard, kept up the fences on their 75 acre farm and did some hunting. After the accident he was unable to do any of those things. Prior to the collision Mr. Morgan often worked until 8:00 or 9:00 p.m. in making insurance collections and sales. After the collision he had a definite personality change and often came home at 1:00 to 2:00 p.m. to take medication for pain.

Mr. Morgan testified that he had not been free of pain since the collision. He described the pain as being about as bad as an earache. His left little finger is numb and he has very little feeling in part of his hand on up his left arm.

In arguing that the verdict is excessive appellants emphasize the facts that Mr. Morgan only had $325 of medical expenses and a $2,000 per year loss in earnings. They then show that the $50,000 verdict invested at 6 per cent would produce an income of $5,648.01 per year until Mr. Morgan reaches age 65. Such an argument, however, omits to give a monetary value to the repairs of the family automobiles and the farm fences—not to say anything about the compensation that would be due for the pain suffered.

Upon the whole record we cannot say that the $50,000 verdict for Mr. Morgan is excessive. The $5,000 verdict in favor of Mrs. Morgan is certainly not excessive in view of the many obligations that fell upon her shoulders as a result of the injuries.

Affirmed.