Vena Welch SCOTT et al, Executors *v.*
John A. JANSSON et al

74-224                                516 S.W. 2d 589

Opinion delivered December 23, 1974

*Smith, Williams, Friday, Eldridge & Clark,* by: *William H. Sutton* and *Frederick S. Ussery,* for appellants.

*Ben McCray,* for appellees.

*Wright, Lindsey & Jennings,* for cross-complainants.

George Rose Smith, Justice. This personal injury action arose from a head-on collision on Interstate 30 in North Little Rock, in March of 1973. One of the drivers, Wade H. Scott, was killed, and the other driver, John A. Jansson, was seriously injured. Jansson and his wife brought this suit against Scott's estate and against Minor F. Green, whose car was indirectly involved in the accident. The jury apportioned the total negligence in the ratio of 80% against Scott, 20% against Green, and none against Jansson. The jury awarded $55,000 to Jansson for his injuries and $25,000 to Mrs. Jansson for loss of consortium. The principal appellants, Scott's personal representatives, argue that the trial court erred in directing a verdict for Jansson upon the estate's counterclaim, that the court erred in allowing a police officer to give certain expert testimony, and that the verdict in favor of Mrs. Jansson is excessive.

Upon the first point, the court was right in directing a verdict for Jansson upon the Scott estate's counterclaim. At the place of the accident Interstate 30 is a divided six-lane north-south highway, with a grass median 24 feet wide. Just before the collision Scott was driving north in the inside lane of traffic, and Green was driving north in the center lane, a few car lengths ahead of Scott. Green's left front tire had a blowout, causing his car to swerve across in front of Scott and onto the median.

Scott applied his brakes, laying down a single skid mark, 41 feet long, before he too left the pavement. Scott's car crossed the median, entered the southbound lanes, clipped the left rear side of a panel truck, and collided head-on with Jansson's car, in the center lane. Jansson testified that he saw the Scott vehicle coming across the median, but he was trapped in the center lane by vehicles on both sides of him. Jansson also said that it all happened in the twinkling of an eye and that he tried to put on his brakes before the collision, but he didn't know whether he succeeded.

We find no substantial evidence upon which the jury could have found, except by guesswork, that Jansson negligently failed to take any action that he should have taken to avoid the collision. In this respect the case is not unlike

*Prickett* v. *Farrell*, 248 Ark. 996, 455 S.W. 2d 74 (1970), where we upheld the trial court's action in directing a verdict upon similar facts. The case of *Gookin* v. *Locke*, 240 Ark. 1005, 405 S.W. 2d 256 (1966), relied upon by the appellants, is not in point, for there the collision occurred on a two-lane highway, and the vehicles laid down more than 300 feet of skid marks before the collision. Certainly that accident did not happen in the twinkling of an eye.

The appellants' second contention concerns the testimony of State Police Officer Robertson, who investigated the accident immediately after it happened. The officer, called as a witness by the plaintiffs, testified that he had worked with the state police for five years and that he was a highway patrolman, drivers' license examiner, and defensive driving instructor. On direct examination he said that Scott's car laid down 41 feet of heavy skid marks "of one of his tires." On cross-examination by Green's attorney the record reflects the following:

Q. Did you also say that was from one tire?

A. One clear tire.

Q. Ordinarily if all the brakes on a vehicle are operating properly, how many skid marks are laid down?

Mr. Sutton: I object unless this man is a brake expert.

The Court: I believe the Trooper would be qualified to answer the question.

A. If all brakes are properly working, I would say there would be at least some indication left physically that there was four tires skidding, and they would usually be not right on top of each other, but offset a little bit.

The appellants argue that the effect of the officer's testimony was that Scott's brakes were not working properly, and counsel then continue: "The state trooper in the case at bar did not give one single qualification which would entitle him to express an opinion on the operation of a braking system."

That, however, as we read the record, was not the point raised in the trial court. Counsel's sole objection was: "I object unless this man is a brake expert," which the trial judge evidently and justifiably took to mean a person with expert knowledge about the mechanical operation of brakes. In overruling the objection the judge stated his belief that a trooper would be qualified to answer the question. We considered a similar point in *American Ry. Express Co.* v. *Cole*, 183 Ark. 557, 37 S.W. 2d 699 (1931). There the trial court permitted witnesses to testify that the damage to a shipment of strawberries had been caused by poor refrigeration. From our opinion:

> Appellant argues that negligence was not shown because the witnesses of appellee who attributed the damage to poor refrigeration and defective equipment admitted that they had no technical knowledge of refrigeration or refrigerating cars. This argument is not sound, as the opinion of the witnesses was based upon long experience as shippers and not upon technical knowledge relative to refrigeration and refrigerating cars. They testified that, from long experience as shippers of perishable goods in refrigerating cars properly iced, they knew how long such commodities should keep in properly equipped cars sufficiently iced and handled with reasonable care.

So here, the trial court did not abuse its discretion in ruling that Officer Robertson, an experienced highway patrolman, was qualified to express an opinion even though he was not, in the language of counsel, "a brake expert." If counsel doubted the officer's familiarity with the effect of defective brakes upon skid marks, a request should have been made that he be put on voir dire to show his incompetency to testify. *Brown* v. *State*, 24 Ark. 620 (1867); McKelvey on Evidence, § 187 (5th ed., 1944). Absent such a request reversible error is not shown, for upon a retrial it might turn out that the officer was fully qualified to testify as he did.

Finally, the appellants (and cross-appellant Green) contend that the $25,000 award to Mrs. Jansson for loss of consortium is excessive. In the light of our earlier cases this con-

tention must be sustained. We must lay aside the fact, stressed by the appellees, that for some months after the accident Mrs. Jansson had to assume, in place of her husband, all responsibility for operating the couple's motel. As we pointed out in *Ark. La. Gas Co.* v. *Strickland*, 238 Ark. 284, 379 S.W. 2d 280 (1964), the jury presumably took that loss into consideration in fixing the husband's damages. To allow the same recovery in favor of the wife would plainly be a duplication.

The pertinent proof is that Mrs. Jansson was deprived of her husband's companionship during his 51 days of hospitalization and for some months thereafter during his recuperation at home — a period totaling less than a year altogether. The couple's normal marital relationship was also suspended for eleven months. Thus there was a total or partial loss of consortium for less than a year. In *Missouri Pac. Transp. Co.* v. *Miller,* 227 Ark. 351, 299 S.W. 2d 41 (1957), there was a *total* loss of consortium for the husband's remaining life expectancy of 27 years, yet there we reduced the $25,-000 award to $15,000. We fully appreciate the decline in the value of the dollar since 1957, but in the case at bar we cannot sustain an award in excess of $10,000 for loss of consortium.

The judgment in favor of Jansson is affirmed. That in favor of Mrs. Jansson is affirmed upon condition that the indicated remittitur be filed within 17 days; otherwise that judgment will be reversed and the cause remanded for a new trial.