OUACHITA NATIONAL BANK, Curator of the Estate of Ted Rodgers; Barbara Rodgers; and Ted Rodgers, Appellants,

v.

TOSCO CORPORATION, Appellee.

No. 81–1490.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1982.

Decided Aug. 23, 1982.

Rehearing and Rehearing En Banc Granted Oct. 11, 1982.

    Whetstone & Whetstone by Bernard Whetstone, Little Rock, Ark., for appellants.

Robert G. Compton, Brown, Compton & Prewett, Ltd., El Dorado, Ark., for appellee.

Before BRIGHT, HENLEY * and JOHN R. GIBSON, Circuit Judges.

HENLEY, Senior Circuit Judge.

This appeal is from the district court's [1] August 22, 1980 order granting a new trial on all issues in this personal injury action unless plaintiffs-appellants [2] consented to a remittitur, and from an adverse judgment entered at the close of the second trial. Appellants contend that the district court abused its discretion in ordering remittitur,

---

* The Honorable J. Smith Henley assumed senior status June 1, 1982.

1. The Honorable Oren Harris, United States Senior District Judge, Eastern and Western Districts of Arkansas.

2. The original complaint named Ted and Barbara Rodgers as plaintiffs and the Lion Oil Company and Raleigh Waller as defendants. Waller was later dropped from the suit and Tosco Corporation was substituted as a defendant as a result of a merger between the two companies. After the order for new trial, the Ouachita National Bank, as Curator of Ted Rodgers' Estate, was substituted as a plaintiff.

in the amount of remittitur ordered, and in its alternative order for a new trial on all issues. Appellants also contend that the district judge erred in denying their petition for reconsideration of the August 22, 1980 order and in failing to disqualify himself after having ordered a new trial. Finally, appellants allege that other errors occurred during retrial which necessitate reversal. For reasons to be stated, we remand for further proceedings.

The underlying action arose from a motor vehicle collision that occurred on October 23, 1978. The collision involved an automobile owned by the Tosco Corporation (Tosco) and driven by Tosco employee Raleigh Waller (Waller), and a loaded log truck driven by Ted Rodgers (Rodgers).

Both vehicles were travelling east on United States Highway No. 82, a paved two-lane highway. The truck driven by Rodgers was an undetermined distance behind the Tosco automobile as they approached a point where the Tosco vehicle attempted to turn left onto a county road. Waller contended that his left-hand blinker light was on; however, Rodgers contended that the Tosco vehicle's right-hand blinker light was on, and the automobile began turning into a parking lot on the right and then suddenly and without warning turned left into the path of Rodgers' vehicle, at which time the collision occurred.

After the collision, the log truck left the highway in a northeasterly direction, struck an above-the-ground gas meter and one or more pine trees, and came to rest several hundred feet from the intersection. Immediately after it stopped, Rodgers exited the truck from the passenger side and landed on his head on the ground. Rodgers sustained serious injuries resulting in quadriplegia.

After the first trial, the jury returned a verdict in the amount of $3.3 million for Rodgers and of $500,000.00 for Mrs. Rodgers.[3] Within ten days after entry of judg-

ment, Tosco filed a Motion for Relief from Judgment under Rule 60(b), a Motion for New Trial under Rule 59, and a Motion for Judgment Notwithstanding the Verdict pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. The parties filed affidavits and briefs in support of their positions on these motions, and on August 22, 1980 the district court ordered a remittitur to $1,312,762.17 for Rodgers and $250,000.00 for Mrs. Rodgers, or in the alternative a new trial. Appellants' petition to the district court for review of that order was denied, and a petition for Writ of Mandamus to this court was also denied.

Appellants elected to take a new trial rather than consent to a total award of $1,562,762.17. At the conclusion of the second trial, however, the jury returned a verdict in favor of Tosco, and the complaint was dismissed with prejudice. This appeal is both from the remittitur order and from the judgment following new trial.

## I. THE AUGUST 22 ORDER

### A. THE APPLICABLE STANDARDS

It is settled law in this circuit that the district court, in considering a motion for new trial, must set aside a jury verdict where it has determined that the verdict is against the clear weight of the evidence, *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 186 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973), that it is the result of passion or prejudice, *id.*; *Mueller v. Hubbard Milling Co.*, 573 F.2d 1029, 1039–40 (8th Cir.), *cert. denied*, 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 174 (1978), or that the verdict is clearly excessive. *Slatton v. Martin K. Eby Constr. Co., Inc.*, 506 F.2d 505, 508 (8th Cir. 1974), *cert. denied*, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975). Furthermore, the district court, in passing on such motions, is not required to view the evidence in the light most favorable to the

---

**3.** In the initial complaint Rodgers requested damages totalling three million dollars. In addition, Mrs. Rodgers requested damages in the amount of $500,000.00 for loss of consortium. A later motion to amend the complaint to in-

crease the requested damages to $5,000,000.00 was denied. However, judgment initially was entered on the $3.3 million verdict returned by the jury.

non-movant; rather, "[i]t may weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Slatton v. Martin K. Eby Constr. Co., Inc.*, 506 F.2d at 508 n.4.

■ The standard ordinarily to be applied by the trial court in passing on a request for remittitur is somewhat different. Ordinarily, remittitur is to be granted only where the verdict is "so grossly excessive as to shock the conscience of [the] court." *Drotzmanns, Inc. v. McGraw-Hill, Inc.*, 500 F.2d 830, 835 (8th Cir. 1974). *See Stineman v. Fontbonne College*, 664 F.2d 1082, 1088–89 (8th Cir. 1981).

■ The standard to be applied by this court in reviewing the trial court's order is clear. In *Slatton v. Martin K. Eby Constr. Co., Inc., supra*, this court was called upon to determine the standard to be applied in reviewing a district court's order of remittitur as a condition of denying a new trial motion. We concluded that such orders would not be disturbed in the absence of a clear abuse of discretion, and that the trial court's determination would be given considerable deference. 506 F.2d at 509. We also held that "the standard we will apply in determining whether there was an abuse of discretion in ordering the remittitur is whether the remittitur was ordered for an amount less than the jury could reasonably find." *Id.* at 508–09.

## B. THE DISTRICT COURT'S ORDER

The district court, in considering the motion for new trial, found that Rodgers had not been asked a question prior to trial which would have elicited a prior felony conviction, that Rodgers had been granted a pardon on the basis of rehabilitation, and that evidence of that conviction probably could not be introduced at a new trial. Accordingly, it found that a new trial on the basis of that conviction was not warranted. The trial court also found that any alleged misconduct on Rodgers' part had no appreciable impact on the jury, and that the jury's finding as to liability was not against the great weight of the evidence. Our review of the record convinces us that these findings are not in error.

■ The district court, however, also said:

In his summation to the jury, counsel for plaintiff made a request for recovery of future nursing services in the sum of $2,215,320.68. Counsel repeatedly inquired of the medical witnesses whether the quality of care received by Mr. Rodgers could make a difference in his life expectancy. Counsel then drove home his request for future nursing services exceeding the degree deemed adequate by the doctors, stating:

So in a way you, in a very real way, very direct way, you can determine the life expectancy of Ted Rodgers, if you make an award here that will be adequate... You can determine very largely the life expectancy to Ted Rodgers yourself by the—what provision you make for him to be taken care of.

Improper or intemperate argument by counsel in summation may be grounds in itself for a new trial, where it tends to arouse undue passion and prejudice on the part of the jury, thereby depriving the opposing party of a fair trial. See *Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin*, 283 U.S. 520 [51 S.Ct. 501, 75 L.Ed. 1243] (1931); *Houfakis [Koufakis] v. Carvel*, 425 F.2d 892 (2 Cir. 1970); *Klotz v. Sears, Roebuck & Co.*, 267 F.2d 53 (7 Cir. 1959). While the quoted argument, standing alone, might not be so improper as to warrant a new trial, the Court considers it so intemperate as to have contributed to the jury awarding to Ted Rodgers a sum grossly exceeding that reasonably supported by the evidence for future attendant care.

*Rodgers v. Tosco Corp.*, No. 79–1038 (W.D. Ark., Memorandum Opinion filed Aug. 22, 1980).

The district court then applied the standards governing consideration of motions for new trial in its extensive review of the medical evidence as to Rodgers' requirements for attendant care. The court found

that plaintiffs' contention that Rodgers would require round-the-clock professional care was against the great weight of the evidence, and concluded that a lay person with minimal training, working eight hours per day, seven days per week, could provide the reasonably necessary attendant care required. The court also found it evident that the jury gave substantial consideration to the exaggerated claim for nursing care in its award, and then said:

> Where the verdict of a jury is clearly or solely due to passion or prejudice, the Court has no choice but to order a new trial. See 6A Moore's Federal Practice, 2d Ed., ¶ 59.05[3] at p. 59–59. However, it is noted at 11 Federal Practice and Procedure, Wright and Miller, 1973, at page 103, in a quote from McCormick, Damages, 1935, § 19, that in cases where, as here, the sympathies or prejudices of the jury are appealed to naturally by the factual situation, to expect a verdict entirely free from sympathy, passion or prejudice would be to ask an impossibility, and that remittitur is appropriate.

*Id.* We have carefully reviewed the record and the briefs and arguments of counsel, as well as the district court's memorandum opinion, and we are not prepared to hold that the district court's order was inappropriate insofar as its grant of a new trial conditioned upon the rejection of a remittitur was concerned. However, the amount of remittitur ordered is more troublesome.

### C. THE AMOUNT OF REMITTITUR ORDERED

■ The district court found that the present cost of reasonably necessary future nursing services for Rodgers is $228,082.85, and while we might have reached a different figure we have no quarrel with the district court's methodology. The district court, however, then subtracted this figure from the total requested by Rodgers for future nursing services, and then deducted the balance obtained from the total amount awarded by the jury. Although at first blush this method appears reasonable, upon

close analysis it nevertheless is flawed because it fails to take into account the difference between the total damages requested by Rodgers and the actual jury award.[4]

In *Slatton v. Martin K. Eby Constr. Co., Inc., supra,* this court made it clear that the district court will not be deemed to have abused its discretion if such remittitur does not reduce the damages awarded to an amount less than the highest award the jury could reasonably find. 506 F.2d at 508–09. It further appears from the record that the district court may not have been overly troubled by the amounts requested by Rodgers for pain and suffering and for loss of earnings.[5] Accordingly, we shall assume for the purposes of this discussion, as the district court may have assumed, that the jury awarded in full the amounts requested in these categories. *Cf. Taken Alive v. Litzau,* 551 F.2d 196, 198 (8th Cir. 1977).

From this assumption, however, it follows that the jury had reduced the requested nursing care figure only when it returned its verdict, and that the district court, in subtracting the allowed nursing care figure from the requested nursing care figure and then subtracting the resulting balance from the overall jury award, has subtracted too much.

On the basis of the assumption used, we believe the district court more logically could have followed one of the following two methods in computing the amount of remittitur. First, the district court could have subtracted the allowed nursing care figure from the requested nursing care figure, and then subtracted the resulting balance from the total damages requested in arriving at the maximum allowable verdict. Alternatively, the district court could have added the allowed nursing care figure to the amounts requested for pain and suffering and for loss of earnings. The result under either of these two approaches yields a maximum allowable verdict of $1,808,-

---

**4.** The amount requested was $3,795,785.50, while the actual award was for $3,300,000.00. The difference is thus $495,785.50.

**5.** The amount requested for pain and suffering was $1,000,000.00 and the amount requested for loss of earnings, etc. was $580,465.00.

547.67,[6] and this result differs from the amount awarded by the district court by $495,785.50, which is precisely the amount by which the total damages requested differed from the amount awarded by the jury.

It nevertheless does not follow that this court will alter the remittitur award and reinstate the original jury's verdict on the figure arrived at. First, the above computations have been based upon assumptions that are not known to be correct, these being that the jury awarded the maximum amount requested for loss of earnings, etc. and for pain and suffering, and that the district court intentionally did not reduce these awards by way of remittitur.[7]

In sum, we are unsure of the precise reasons which prompted the district court's mathematical calculations and are unwilling to attempt to substitute calculations of our own.

■ We will add that for purposes of analysis a breakdown of a general jury verdict into specific categories of types of damage may not be inappropriate. Moreover, in instances it may be appropriate for the trial court to make an analysis along lines of requests made by counsel in their jury presentations. And when any such analysis is relied upon the trial court, of course, to the extent necessary would express its views to the parties.

It is to be remembered, however, that while analysis is helpful, and indeed may be necessary in many instances, ultimately it is the verdict as a whole that must be considered in determining whether the verdict is shocking to the conscience. *Slatton v. Martin K. Eby Constr. Co., Inc.,* 506 F.2d at

508–09. And since, as indicated, on review we tend to find no abuse of discretion when the award measures fairly against the highest sum a jury reasonably could have returned, any analysis by the trial court undoubtedly will consider the totality of the evidence and reflect that consideration in its judgment as justice may require.

From what has been said, it is clear that our difficulty with the mathematics and analysis of the case prompts remand. We caution that while the district court on remand may make an award higher than that made in its 1980 order, it is not precluded from finding that an allowed award equal to or less than that allowed in its order is appropriate.

## D. THE AWARD TO MRS. RODGERS

■ Appellants also contest the district court's order insofar as it allowed a remittitur on the award to Mrs. Rodgers. In considering that award, the district court correctly noted that in diversity actions such as this, it must look to the forum state's case law for guidance on the question of excessiveness, *Stineman v. Fontbonne College,* 664 F.2d at 1089, and the damage award may not exceed "that which could be sustained were the case before the highest court of the state whose substantive law gives rise to the claim." *Hysell v. Iowa Public Service Co.,* 559 F.2d 468, 472 (8th Cir. 1977). Further, it is not disputed that Arkansas law governs the substantive aspects of this claim.

In applying this standard, the district court found the jury award of $500,000.00 to Mrs. Rodgers shocking to the conscience,

---

**6.** The first method yields a result of $1,808,547.67 [$3,795,785.50 − ($2,215,320.68 − $228,082.85)]. The second method yields $1,808,547.85 ($228,082.85 + $1,000,000.00 + $580,465.00). The $.18 difference reflects an addition error on the part of appellants in calculating the total amount requested.

**7.** The district court stated:

Of the total request of counsel for plaintiff for damages in his summation, $3,795,785.50, only $580,465.00 was claimed for past and future loss of income, personal services to the household, medical expenses past and

future, travel expenses past and future. The balance was $1,000,000.00 for pain, suffering and mental anguish, physical injury, scarring and disfigurement and $2,215,320.68 for nursing care. It is evident that the jury gave substantial consideration to the grossly exaggerated claim for nursing care in its award of $3,300,000.00 to Mr. Rodgers, even to the extent of the full amount requested by counsel in his summation.

This language may or may not indicate that the district court was also troubled by the amount requested for pain and suffering.

and concluded that damages in the amount of $250,000.00 were appropriate.

Appellants have cited several cases in support of their contention that the $500,-000.00 award was not excessive. We observe, however, that the bulk of the cases cited involved the laws of forum states other than Arkansas, and are therefore not directly in point. *See Stineman v. Fontbonne College,* 664 F.2d at 1089. In addition, although the remaining cases cited by appellants on this issue do involve the substantive law of Arkansas, none of these cases were decisions of the Supreme Court of Arkansas.

■ In sum, appellants have not cited, and we have not found, any decisions of the Supreme Court of Arkansas which would indicate that the district court's order granting remittitur was a clear abuse of its discretion.

The district court, in determining the amount of damages that the Supreme Court of Arkansas would sustain, said:

The Arkansas Supreme Court has, on some occasions, acted to reduce by way of remittitur awards for loss of consortium. *Scott v. Jansson,* 257 Ark. 410, 516 S.W.2d 589 (1974); *Missouri Pacific Transportation Co. v. Miller,* 227 Ark. 351, 299 S.W.2d 41 (1957); *Arkansas Louisiana Gas Co. v. Strickland,* 238 Ark. 284, 379 S.W.2d 280 (1964).

In view of the circumstances of this case, the virtual quadriplegia of Ted Rodgers, the virtually complete loss of normal marital consortium, the exceedingly heavy burden of constant attendant care that she has carried through the date of trial, and the continuing attention which she must give to her husband during his remaining years, the Court concludes that the Supreme Court of Arkansas would sustain an award to Barbara Rodgers in the amount of $250,000.00 to compensate her for those damages combined under the term of loss of consortium. This is suggested by the *Scott v.*

*Jansson,* supra, ruling, where $10,000.00 was approved for loss of consortium for one year, while the loss by Mr. [sic] Rodgers will extend for more than thirty years, and includes past extraordinary care and services.

Our own research has disclosed, in addition to the cases cited by the district court, two 1981 decisions of the Arkansas Supreme Court which have reduced or approved the reduction of awards for loss of consortium. In *Morrison v. Lowe,* 274 Ark. 358, 625 S.W.2d 452 (1981), an order of remittitur reduced damages for loss of consortium from $100,000.00 to $30,000.00. And in the same year, that court reduced by remittitur an award of $50,000.00 for loss of consortium to $25,000.00. *Scheptmann v. Thorn,* 272 Ark. 70, 612 S.W.2d 291 (1981).

In each of these cases, loss of consortium had been limited to time periods of less than one year. Moreover, we note that neither of these decisions was available to the district court at the time that it entered its order. In addition, our research indicates that at no time prior to 1981 had the Arkansas Supreme Court sustained an award of greater than $15,000.00 for loss of consortium. *See Jordan v. Adams,* 259 Ark. 407, 533 S.W.2d 210 (1976) (award of $600.00 not excessive); *Scott v. Jansson,* 257 Ark. 410, 516 S.W.2d 589 (1974); *Arkansas Louisiana Gas Co. v. Morgan,* 256 Ark. 250, 506 S.W.2d 560 (1974) ($5,000.00 award not excessive); *Blissett v. Frisby,* 249 Ark. 235, 458 S.W.2d 735 (1970) ($6,768.00 award not excessive); *Arkansas Louisiana Gas Co. v. Strickland,* 238 Ark. 284, 379 S.W.2d 280 (1964) ($2,500.00 award reduced to $1,000.00); *Bailey v. Stewart,* 236 Ark. 80, 364 S.W.2d 662 (Ark.1963) ($1,000.00 award not excessive); *Missouri Pacific Transportation Co. v. Miller,* 227 Ark. 351, 299 S.W.2d 41 (Ark.1957) ($25,000.00 award held excessive and reduced to $15,000.00).[8] Accordingly, we are not prepared to hold that the district court abused its discretion in entering its order, especially in light of the cases

---

8. *Miller* is the only case found which involved complete loss of consortium over an extended period of time (twenty-seven years). Although that case was decided some twenty years ago, we nevertheless observe that the amount allowed in the instant case is over sixteen times that allowed in *Miller.*

available to, and the factors considered by, that court.

Nevertheless it is observed that while the two 1981 decisions discussed above were rendered after the district court's order was entered, they are virtually contemporaneous with the district court's order. For this reason, and because we have already directed the district court to reconsider the damage award to Rodgers, we deem it appropriate to allow the district court to reconsider the award to Mrs. Rodgers as well.

## II. APPELLANTS' REMAINING CONTENTIONS

Although our actions to this point have effectively disposed of this appeal, we observe that the remaining allegations of error concern actions of the district court that are likely to be repeated upon remand. A brief discussion of appellants' remaining contentions is therefore appropriate in the interests of judicial economy.

### A. NEW TRIAL ON ALL ISSUES

Appellants first assert that the order for new trial should have been limited to damages issues only, as liability had already been decided. This argument, however, overlooks the fact that the jury returned a general verdict wherein it awarded $3.3 million of Rodgers' requested $3.8 million in damages.[9]

In *Gasoline Products Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931), the Supreme Court held that "[w]here the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Id.* at 500, 51 S.Ct. at 515. The Court further held that where the questions of liability and damages are so interwoven that they cannot be submitted independently without

confusion or uncertainty, a partial new trial is inappropriate.

This circuit still follows the rationale of *Gasoline Products.* See *Slater v. KFC Corp.*, 621 F.2d 932, 938 (8th Cir. 1980); *Richardson v. Communications Workers of America*, 530 F.2d 126, 130 (8th Cir.), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976). Further, we have held that the district court's decision as to whether to grant a partial new trial is to be reviewed by this court under an abuse of discretion standard. See *Richardson v. Communications Workers of America*, 530 F.2d at 130.

In the case at bar, it is possible that the jury's reduction of the requested damages was due solely to its belief that the total damages requested were not justified. It is, however, also possible that the requested damages were not awarded because the jury assessed some portion of the fault to Rodgers. In these circumstances, it is not clear that the issues of liability and damages are so distinct as to warrant a partial new trial.[10] Consequently, we find no abuse of discretion in the trial court's failure to limit the new trial to the issue of damages only.

### B. THE ACTIONS OF THE TRIAL JUDGE

Appellants' next contentions are (1) that the district judge should have disqualified himself after ordering a new trial; and (2) that the district judge improperly allowed himself to become a witness at the second trial in violation of Rule 605 of the Federal Rules of Evidence.

Appellants have cited the following as circumstances rendering questionable the district judge's ability to remain impartial:

(1) The judge's taking a position in his memorandum opinion as to the credibility of witnesses;

**9.** The $3.8 million figure was the figure actually submitted to the jury by Rodgers.

**10.** It follows that a new trial on Mrs. Rodgers' claim for loss of consortium was required as well. In Arkansas, a spouse's action for loss of

consortium is derivative to that of the injured spouse, so that a judgment adverse to the injured spouse acts as a bar to the other spouse's action. *Lopez v. Waldrum Estate*, 249 Ark. 558, 460 S.W.2d 61, 65 (1970), and cases cited therein.

(2) His taking a position as to the degree of medical care required by Rodgers and the cost thereof;

(3) The trial court's refusal to certify for review by this court the remittitur and new trial issues discussed previously;

(4) The fact that appellants' previous petition for writ of mandamus had alleged that the trial judge had abused his discretion in several respects.

In addition, appellants cite four instances during the second trial as evidence that the trial judge was, in fact, biased.

These contentions are completely without merit. 28 U.S.C. § 455, as amended in 1974, Pub.L.No.93–512, 88 Stat. 1609, provides:

§ 455. Disqualification of justice, judge, or magistrate

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

The legislative history of the amended statute indicates that it was designed to "'promote public confidence in the impartiality of the judicial process by saying, in effect, that if there is a reasonable factual basis for doubting the judge's impartiality he should disqualify himself.'" *Blizard v. Fielding*, 454 F.Supp. 318, 320 (D.Mass. 1978), *aff'd sub nom. Blizard v. Frechette*, 601 F.2d 1217 (1st Cir. 1979), *quoting* H.R. Rep.No.1453, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 6351, 6355. The test, however, is an objective test. *See United States v. Martorano*, 620 F.2d 912, 919 (1st Cir.), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).

[I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision.

Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

*Blizard v. Fielding*, 454 F.Supp. at 320–21, *quoting* H.R.Rep.No.1453, *reprinted in* [1974] U.S.Code Cong. & Ad.News 6351, 6355.

■ Thus, a judge should not disqualify himself solely on the basis of prior judicial rulings made during the course of the litigation. *See United States v. Martorano*, 620 F.2d at 919; *United States v. Winston*, 613 F.2d 221, 223 (9th Cir. 1980); *Blizard v. Fielding*, 454 F.Supp. at 321; *Maret v. United States*, 332 F.Supp. 324, 325 (E.D.Mo.1971).

If a judge who rules against a party can successfully be labelled prejudiced for that reason, then the Court of Appeals would never be able to remand a case for further action by the judge who initially decided it. It should be self-evident that adverse rulings in themselves do not create judicial partiality. *See, e.g., United States v. Schwartz*, 535 F.2d 160, 165 (2d Cir. 1976); *Honneus v. United States*, 425 F.Supp. 164, 166 (D.Mass.1977). Otherwise, "there would be almost no limit to disqualification motions and the way would be opened to a return to 'judge shopping,' a practice which has been for the most part condemned."

*Blizard v. Fielding*, 454 F.Supp. at 321, *quoting Lazofsky v. Sommerset Bus Co., Inc.*, 389 F.Supp. 1041 (E.D.N.Y.1975). Accordingly, while "a judge's participation in a given case may on occasion form the basis for a finding of bias," *Blizard v. Fielding*, 454 F.Supp. at 321, a judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise. *State v. Freeman*, 478 F.Supp. 33, 35 (D.Ida.1979). In this case,

such a burden may be met only where the complaining party can point to specific behavior on the part of the judge which reasonably suggests that there has, in fact, been some friction between the judge and the complaining party. Mere disagreement over the state of the law is not enough. *United States v. Conforte*, 457 F.Supp. 641, 652 (D.Nev.1978), and the cases cited therein, *aff'd*, 624 F.2d 869 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *Blizard v. Fielding*, 454 F.Supp. at 321–22; *Maret v. United States*, 332 F.Supp. at 325–26.

Appellants have cited four statements made by the trial judge during the course of the second trial which, they assert, indicate that the trial judge was biased. We have carefully reviewed these statements in the context in which they were made, and we conclude that appellants' argument that these statements indicate bias borders on the frivolous.

■ With regard to appellants' argument that the trial judge acted as a witness in violation of Rule 605 of the Federal Rules of Evidence, it is sufficient to note that they have not cited any specific instances wherein the trial judge acted as a witness. Rather, appellants contend that the trial judge "pursued a course of conduct during the trial that overstepped the line of permissible liberties." It is difficult to see how such a bald assertion, without more, could ever justify reversal.

### C. INSURANCE

Appellants' final argument is that the trial court erred in allowing Tosco to inform the jury that it was covered by the Hartford Insurance Company. This question was originally presented to the trial court in the context of a Motion in Limine, and that court found that Tosco intended to call as a witness an insurance adjuster who worked for Hartford.

■ We observe initially that the collateral source rule and Rule 411 of the Federal Rules of Evidence are designed to avoid the possibility of prejudice to the insured party. *See Charter v. Chleborad*, 551 F.2d 246, 248 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct.

176, 54 L.Ed.2d 128 (1977). In this regard, it is generally thought that the jury's knowledge that a plaintiff is receiving insurance benefits, or that a defendant is carrying liability insurance, might serve to decrease or increase, respectively, the amount of damages awarded by a jury. However, it is established that the existence of liability insurance may be used for some purposes, such as showing the possible bias of a witness. *Id.*

■ In any event, we fail to see any prejudice to a plaintiff where the jurors are aware that the defendant, an oil company, carries insurance. Accordingly, we hold that any error relating to this issue was harmless.

### III. CONCLUSION

As we have noted, the district court is not precluded from finding a total allowable award in an amount greater than, equal to, or less than that allowed in its previous order and we express no opinion as to what the award should be.

The judgment dismissing the complaint and that ordering remittitur or new trial are vacated and the cause is remanded for further proceedings consistent with this opinion.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent from the decision of the majority to remand this case to the district court for further consideration of the issue of damages. I would affirm the judgment of the district court.

The district court concluded that the verdict was clearly excessive, against the great weight of evidence, and not supported by substantial evidence. It specifically found that the jury gave substantial consideration to the grossly exaggerated claim for nursing care even to the extent of the full amount requested by counsel in his summation. The district court, therefore, ordered a remittitur in the amount that the claimed future nursing service exceeded the cost of

the services as supported by the record and made the following conclusions:

In consideration of all factors and elements of damage claimed, the Court finds that a remittitur should be ordered as to the damages awarded to Ted Rodgers in the amount of $1,987,237.83. This would reduce his recovery to $1,312,762.17, which amount the Court finds is the largest sum which the jury could reasonably have awarded based upon the competent and substantial evidence in the record and after giving the proper weight thereto.

The district court's conclusion is thus based on the verdict as a whole rather than the specific elements making up the award, pain and suffering, loss of earnings, and future nursing services. The district court's conclusion should be so reviewed by this court rather than by engaging in mathematical calculations on the items of damages requested by often overly optimistic counsel in argument.

The district court's conclusion is consistent with the standards set forth in *Slatton v. Martin K. Eby Construction Company, Inc.*, 506 F.2d 505, 508–09 (8th Cir. 1974). Under the principles of *Slatton* I see no abuse of discretion on the part of the district court in reaching its conclusion.

Plaintiff chose to gamble with a substantial award in a case with a "sharp conflict in the evidence as to the causation of the collision." I would not relieve plaintiff of the consequences of the gamble, and would affirm the judgment of the district court.