**OUACHITA NATIONAL BANK, Curator of the Estate of Ted Rodgers, Barbara Rodgers, and Ted Rodgers, Appellants,**

v.

**TOSCO CORPORATION, Appellee.**

**No. 81–1490.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1983.

Decided Aug. 25, 1983.

As Amended Sept. 8, 1983.

Whetstone & Whetstone by Bernard Whetstone, Little Rock, Ark., for appellants.

Robert C. Compton, Brown, Compton & Prewett, Ltd., El Dorado, Ark., for appellee.

Before LAY, Chief Judge and HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges. EN BANC.

BRIGHT, Circuit Judge.

Ted Rodgers, Barbara Rodgers, and Ouachita National Bank (curator of the estate

of Ted Rodgers) appeal from the district court's judgment entered pursuant to a jury verdict. The district court dismissed plaintiffs' claims against defendant Tosco Corporation (Tosco) arising from severe bodily injuries sustained by Ted Rodgers in an automobile collision with a vehicle owned by Tosco's predecessor in interest. In an earlier trial, a jury had awarded Ted and Barbara Rodgers $3.8 million, but the district court ordered a remittitur to $1,512,762, or in the alternative a new trial on grounds of excessiveness of the awards. The Rodgers rejected the remittitur and, joined by the Ouachita National Bank, retried their case against Tosco. At the second trial, the jury arrived at a contrary result and dismissed the action. On appeal, appellants raise several issues pertaining to the district court's ordering of a remittitur. Upon review of the record, we conclude that the district court committed prejudicial error in calculating the amount of Ted Rodgers' remittitur after the first trial. Accordingly, we must reverse the judgment of dismissal on the second trial and remand the case to the district court to correct the initial error made in the remittitur order following the first trial.

## I. *Background.*

On October 3, 1978, a tractor trailer driven by Ted Rodgers collided with a car driven by Raleigh Waller, an employee of Lion Oil Company. Both men had been driving eastward, approximately seven miles east of El Dorado, Arkansas, on U.S. Highway 82, a paved, two-lane highway. The two vehicles collided near the highway's center line. Rodgers' truck crossed the center line and continued off the highway for several hundred feet. Immediately after the truck came to a stop, Rodgers leaped from the truck, and in so doing, struck his head on the ground. Rodgers sustained a severed spinal cord, and has been rendered a permanent quadriplegic.

Ted Rodgers and his wife, Barbara Rodgers, filed suit in district court, against Lion Oil Company and Raleigh Waller. The Rodgers later dismissed Waller from the suit. In addition, they substituted Tosco Corporation for the Lion Oil Company following the merger of these two companies. Ted Rodgers sought $3 million in damages for his injuries. Barbara Rodgers sought $500,000 in damages for loss of consortium.

At trial, Tosco contested both liability and damages. Tosco contended Rodgers had been contributorily negligent in jumping from his truck following the accident. The jury found for Rodgers, awarding $3.3 million to Ted Rodgers and $500,000 to Barbara Rodgers.

Following the trial court's entry of judgment, Tosco filed several posttrial motions. In response, the district court filed a memorandum opinion stating that it had determined the jury's verdict on liability not to be against the great weight of the evidence. The district court, therefore, denied Tosco's motion for a new trial. The court, however, also concluded that

> as to the amount of damages * * * the verdicts of the jury were clearly excessive, against the great weight of the evidence, not supported by substantial evidence, the product of passion, and that to permit the verdicts of the jury to stand in the form of judgment would result in a clear miscarriage of justice.

Consequently, the court ordered a remittitur in Ted Rodgers' damages from $3.3 million to $1,312,762.17, or in the alternative, a new trial. In addition, the court found the jury's award to Barbara Rodgers, "so grossly excessive as to shock the conscience of this court[,]" and therefore, ordered a remittitur on her damages from $500,000 to $250,000, or in the alternative, a new trial.

Following an unsuccessful petition to the district court to review its order and an unsuccessful petition to this court for a writ of mandamus, the Rodgers elected to proceed with a new trial rather than accede to a reduced total award of $1,562,962.17. Prior to the second trial, the district court permitted the curator of Ted Rodgers' estate, the Ouachita National Bank, to substitute as party plaintiff for Ted Rodgers. On

retrial, the jury returned a verdict completely absolving Tosco of liability.

On appeal from the judgment in the second trial, a panel of this court filed an opinion vacating the judgment of the district court and remanding the cause for further proceedings. *Ouachita National Bank v. Tosco Corp.*, 686 F.2d 1291 (8th Cir.1982). Thereafter, on petition for rehearing, this court has reconsidered the appeal by the court en banc.

■ After reviewing the briefs and trial records, we adopt only Part II of the panel opinion. *Id.* at 1299–1301. Specifically, we conclude that: (1) the district court did not err in denying appellants' request to limit the issues in the second trial to a determination of damages, *Id.* at 1299; (2) the district judge properly refused to disqualify himself before the second trial and did not improperly become a witness, *Id.* at 1299–1301; and (3) the district court did not err in permitting Tosco to inform the jury that it carried insurance. *Id.* at 1301. We now proceed to address the only remaining issues on appeal: the appropriateness of the district court's remittiturs to Ted and Barbara Rodgers.

## II. *Discussion.*

### A. *Standards of Review.*

■ A trial court should grant remittitur only when the verdict is "so grossly excessive as to shock the conscience of [the] court." *Drotzmanns, Inc. v. McGraw-Hill, Inc.*, 500 F.2d 830, 835 (8th Cir.1974). In *Slatton v. Martin K. Eby Construction Co.*, 506 F.2d 505 (8th Cir.1974), this court enunciated the standard to be applied in reviewing a trial court's order of remittitur as a condition for denying a new trial. We stated, "the standard we will apply in determining whether there was an abuse of discretion in ordering the remittitur is whether the remittitur was ordered for an amount less than the jury could reasonably find." *Id.* at 508–09.

■ After carefully reviewing the trial record, as well as the parties' briefs, we conclude that while the district court was justified in granting a remittitur, it erroneously calculated the amount of the remittitur, and in doing so arrived at an amount substantially less than the amount to which Ted Rodgers was entitled under the circumstances of the case as presented to the district judge.

### B. *The Amount of Remittitur Ordered for Ted Rodgers.*

Following the jury's verdict in the first trial, the district court sustained the jury's finding of liability against Tosco. The district court ordered a remittitur because the court determined that an improper closing argument by plaintiffs' counsel had so inflamed the jury that the part of their award for Ted Rodgers' future nursing care was grossly exaggerated. The district court apparently found that the jury properly awarded Ted Rodgers the full amounts that he requested for loss of earnings and pain and suffering.[1] We find no fault with any of these determinations by the district court.

Ted Rodgers made a total request for $3,795,785.50, which included alleged expenses for nursing care, while the actual jury award to him was $495,785.50 less, or $3,300,000. In calculating the remittitur, the district court determined the present value of Ted Rodgers' reasonably necessary future nursing services to be $228,082.85. We find no fault with this determination. The district court then subtracted this figure from the total amount Rodgers requested for future nursing care, $2,215,320.68. The district court subtracted the difference, $1,987,237.83, from the jury's total award to Ted Rodgers, $3,300,000, and concluded that the resulting $1,312,762.17 represented the

---

1. Ted Rodgers in final argument calculated $580,465 damages for past and future loss of income, personal services to the household, medical expenses and travel expenses (loss of earnings). He calculated additional amounts of $1 million for pain, suffering, and mental anguish, physical injury, scarring and disfigurement (pain and suffering), all exclusive of nursing expenses.

highest amount a jury could properly have awarded to Ted Rodgers.[2] This methodology is incorrect.

The district court failed to take into consideration the fact that the jury did not award Ted Rodgers the full amount of his request for damages, including alleged expenses for special nurses, but an amount $495,780.50 less. As a result, the district court deducted too much from the jury's award. Assuming, as the district court did, and as we do, that the jury awarded Rodgers the full amounts he requested for loss of earnings and pain and suffering, the jury itself must have partially reduced Rodgers' recovery for future nursing services from the amount he requested. Thus, the district court erred in further deducting the total amount by which Rodgers' request exceeded the largest amount a jury could have awarded for future nursing services.

The district court, having decided on remittitur to reduce only that amount which was attributable to future cost of nursing care, should have computed the reduced amount in either of the following ways: First, the district court could have subtracted the allowed nursing care figure from the requested nursing care figure, and then subtracted the resulting balance from the total damages requested in arriving at the maximum allowable verdict. Alternatively, the district court could have added the allowed nursing care figure to the amounts requested for pain and suffering and for loss of earnings. The result under either of these two approaches yields a maximum allowable verdict of $1,808,547.67.[3] This result differs from the result awarded by the district court by $495,785.50, which is precisely the amount by which the total damages requested differed from the amount awarded by the jury.

**2.** The trial court's calculations can be summarized.

| | |
|---|---|
| Requested Nursing Services | $2,215,320.68 |
| Trial Court's Calculation of Reasonable Nursing Services | 228,082.85 |
| Difference (Amount of Remittitur) | $1,987,237.83 |
| Jury Award | $3,300,000.00 |
| Remittitur | $1,987,237.83 |
| Trial Court Award | $1,312,762.17 |

### C. The Amount of Remittitur Ordered for Barbara Rodgers.

The district court considered the jury's $500,000 award to Barbara Rodgers for loss of consortium separately. The court stated:

[The jury's $500,000] award is so grossly excessive as to shock the conscience of this Court. While the evidence shows that Mrs. Rodgers has been deprived of the services or [sic] her husband, and to some degree of his companionship, and has been required by the financial circumstances to serve as his fulltime attendant, it is contemplated that she will have the benefit of a hired attendant to care for Ted Rodgers' needs eight hours per day, and that she will not be called upon to perform services over and above the usual call of marital duty in the future. She will be relieved of financial worries and extraordinary duties.

The court reasoned:

The Arkansas Supreme Court has, on some occasions, acted to reduce by way of remittitur awards for loss of consortium. *Scott v. Jansson*, 257 Ark. 410, 516 S.W.2d 589 (1974); *Missouri Pacific Transportation Co. v. Miller*, 227 Ark. 351, 299 S.W.2d 41 (1957); *Arkansas Louisiana Gas Co. v. Strickland*, 238 Ark. 284, 379 S.W.2d 280 (1964).

In view of the circumstances of this case, the virtual quadriplegia of Ted Rodgers, the virtually complete loss of normal marital consortium, the exceedingly heavy burden of constant attendant care that she has carried through the date of trial, and the continuing attention which she must give to her husband during his remaining years, the Court con-

**3.** The first method yields a result of $1,808,-547.67, ($3,795,785.50–($2,215,320.68–$228,-082.85)). The second method yields $1,808,-547.85, ($228,082.85 + $1,000,000 + $580,465). The $.18 difference reflects an error in addition on the part of the appellants in calculating the total amount requested.

cludes that the Supreme Court of Arkansas would sustain an award to Barbara Rodgers in the amount of $250,000.00 to compensate her for those damages combined under the term of loss of consortium. This is suggested by the *Scott v. Jansson, supra,* ruling, where $10,000.00 was approved for loss of consortium for one year, while the loss by Mr. Rodgers will extend for more than thirty years, and includes past extraordinary care and services.

A remittitur in the amount of $250,-000.00 in the award to Mrs. Barbara Rodgers for her loss of consortium herein will be ordered.

We have found no case prior to 1981 in which the Arkansas Supreme Court sustained an award of greater than $15,000 for loss of consortium. *See, e.g., Scott v. Jansson,* 257 Ark. 410, 516 S.W.2d 589 (1974). Our examination of the district court's opinion leaves us convinced that the district court did not abuse its discretion in ordering Barbara Rodgers' remittitur. Thus, Barbara Rodgers is bound by her rejection of remittitur at the first trial and is foreclosed from recovery by the dismissal in the second trial.

### III. *Conclusion.*

We conclude the district court abused its discretion in reducing Ted Rodgers' damages below $1,808,547.67. Accordingly, we reverse the district court's entry of judgment pursuant to the second trial and remand this cause to the district court to modify its order granting remittitur or new trial to correct the remittitur figure for Ted Rodgers to $1,808,547.67.[4] We reject Barbara Rodgers' appeal and affirm the district court's judgment with respect to her.

Appellant Ouachita National Bank is entitled to costs on this appeal.

JOHN R. GIBSON, Circuit Judge, with whom McMILLIAN, Circuit Judge, joins, dissenting in part, and concurring in part.

I respectfully dissent from the decision of the majority to remand this case to the district court to correct the remittitur figure for Ted Rodgers to $1,808,547.67. I would affirm the judgment of the district court entered after the second trial.

The majority opinion suffers from two infirmities. It treats the issue of damages by considering the particular elements of damage separately and not the damage award as a whole, and its entire chain of reasoning is based on the amounts of the separate items of damage requested by counsel in argument.

The district court concluded from reviewing the entire record as to amount of damages that the verdict was clearly excessive, against the great weight of evidence, and not supported by substantial evidence. In considering remittitur, the district court recognized that the standard was the highest amount of damages the jury could properly have awarded. It specifically found that the jury gave substantial consideration to the grossly exaggerated claim for nurs-

---

4. We must reject Judge John R. Gibson's view advanced in his dissenting and concurring opinion that the only proper subject for our consideration is the damage award in its entirety. By necessity, we are guided in this matter by the manner in which the district court considered the award. The district court expressly considered each of the separate elements of damages. The court stated that it based the remittitur on its belief that improper closing argument by the Rodgers' counsel influenced the jury to award an excessive amount for nursing care, thereby resulting in an excessive overall verdict. We do not quarrel with this approach. Our opinion concludes, however, that the district court erred in its mathematical calculation of the largest possible amount the jury could have awarded Ted Rodgers for nursing care, and thereby erred in its calculation of the overall award.

We must reject Judge Fagg's view as well. Judge Fagg would reinstate the entire jury award to Ted Rodgers. This approach overrules the district court's reasoned belief that the Rodgers' attorney so inflamed the jury as to prejudice Tosco. Judge Fagg terms the closing argument "run-of-the-mill" and "low-key." Reading the transcript of the closing argument, we might be inclined to agree, but we were not in the courtroom and we are in no position to speculate about the overall effect of that argument. The trial judge was in the best position to observe and assess the effects of the final argument.

ing care even to the extent of the full amount requested by counsel in his summation. The district court, therefore, ordered a remittitur. While it did so in the amount that the claimed future nursing service exceeded the cost of the services as supported by the record, the following conclusions made clear that it was based on the verdict as a whole:

> In consideration of all factors and elements of damage claimed, the Court finds that a remittitur should be ordered as to the damages awarded to Ted Rodgers in the amount of $1,987,237.83. This would reduce his recovery to $1,312,762.17, which amount the Court finds is the largest sum which the jury could reasonably have awarded based upon the competent and substantial evidence in the record and after giving the proper weight thereto.

The district court's analysis and its conclusion are thus based on the verdict as a whole rather than the specific elements making up the award—pain and suffering, loss of earnings, and future nursing services. The district court's conclusion should be so reviewed by this court rather than by engaging in mathematical calculations on the items of damages requested by counsel in argument.

The district court's conclusion is consistent with the standards set forth in *Slatton v. Martin K. Eby Construction Co.,* 506 F.2d 505, 508–09 (8th Cir.1974). Under the principles of *Slatton* I see no abuse of discretion on the part of the district court in reaching its conclusion.

The jury returned a general verdict. There were no interrogatories and no special verdict to inform us how the jury considered the request for each specific item of damages. We know only the amount of the general verdict and the district court in its order clearly deals with the general verdict and the amount of damages as a whole.

The majority can only speculate that the jury determined to award the exact amount of loss of earnings requested by plaintiff and the exact amount of damages for pain and suffering requested by plaintiff. It is only because the evidence was so clear on the question of nursing services that the district court was justified in making a specific conclusion on that item. The district court properly considered the total amount of the jury award and found it to be excessive, and in doing so reasoned from the excessive amount of the nursing services requested. Its conclusion, however, was not limited to this specific item of damages, but rather was based on the damages as a whole. The majority errs in reviewing the question by breaking the award down into its presumed components and engaging in its own calculations. For all we know, the jury in reaching its award may have felt that the claims for all three items were excessive. The only logical way for the verdict to be reviewed is the manner followed by the district court in considering it as a whole.

We place our analysis on quicksand created by the fervor of counsel when we take as a starting point in review of a damage award the amount counsel requests in jury argument, and the particular items in the request for damages. Optimism springs eternal in counsel requesting an award from a jury. Lawyers are instructed to request generous awards from juries and experience teaches that very few err by requesting damages on the low side. The district court in reaching its conclusion followed *Slatton* in looking to the largest sum which the jury could reasonably have awarded based on competent and substantial evidence. We should review the case from this standpoint rather than from the standpoint of the detail of the jury arguments made by optimistic counsel for plaintiff. It would be equally fallacious to view a jury award from the standpoint of the abstemious arguments of counsel for the defendant. The point is that arguments of counsel, whether of plaintiff or defendant, should not be the measure but rather what the jury could reasonably have found. This was the standpoint from which the verdict was reviewed by the district court and it should be the standpoint from which this court reviews the verdict.

FAGG, Circuit Judge, concurring in part and dissenting in part.

I concur in the result reached by the majority on Mrs. Rodgers' claim for loss of consortium but I do not agree with the remittitur imposed on the jury award to Mr. Rodgers at the first trial.

In a run-of-the-mill, low-key final argument that drew no objection or interference from opposing counsel or the trial court, Rodgers' attorney gave the jury his request on each item of damage, asking $2,215,-320.68 for future nursing care, $1,000,000 for pain, suffering, mental anguish, and physical injury, and $580,465 for loss of income, personal household services and medical expenses. When the jury returned a general verdict for $3.3 million, the judge assumed that the jury had included in its verdict the full amount requested by counsel for future nursing care. Consequently, he made an analysis of the evidence bearing upon future nursing care only, then calculated what he deemed to be a reasonable award for this item of damage, $228,082.85, and ordered a remittitur consistent with his perception of the jury's allocation for this category within the general verdict. As far as I can determine, however, there is no support in the record for the trial court's arbitrary and unfounded assumption that the jury allocated $2,215,320.68 for future nursing care.

It is my belief that the judge failed properly to apply the applicable legal standard. First, he failed to consider Rodgers' verdict as a whole. Second, because he isolated one item of damage to the exclusion of the others, there is simply no way that it can fairly be said that the judge made a reasoned judgment concerning the maximum limit of a reasonable range within which the jury could have returned its verdict comprising the several categories of general damage submitted to it. Absolutely no consideration was given to the possibility that the jury may have awarded Rodgers more for pain, suffering, mental anguish, personal injury, or one of the other categories of loss than had been requested by counsel. Of necessity, these items of damage had to

be considered, otherwise the judge was not in a position properly to determine if the remittitur was for an amount less than the jury could reasonably find. *See Slatton v. Martin K. Eby Construction Co.,* 506 F.2d 505, 508–09 (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975). Notwithstanding a passing conclusory statement to the effect that he considered "all factors and elements of damage claimed," it is self-evident from the judge's analysis that he did not consider the verdict as a whole. Instead, the judge's calculation of the highest reasonable figure for nursing care directly determined the amount of the remittitur.

In reality, all the judge did in the course of his analysis was make his own calculation for future nursing care, shrug off other substantial items giving rise to general unliquidated damages that are incapable of precise calculation but capable of generating a substantial award, and unjustifiably intrude upon the jury as a consequence. For instance, it has been estimated that awards for pain and suffering account for 72% of damages in personal injury litigation. *Jones & Laughlin Steel Corp. v. Pfeifer,* —— U.S. ——, 103 S.Ct. 2541, 2558 n. 35, 76 L.Ed.2d 768 (1983). If this percentage had been applied to Rodgers' verdict, the judge's calculations for a maximum allowable jury award would have closely approximated the jury's verdict:

| | |
|---|---|
| Pain, suffering, mental anguish, physical injury ($3.3 million x .72) | $2,376,000 |
| Loss of income, personal services, etc. per Rodgers' final argument request | 580,465 |
| Future nursing care as calculated by the trial court | 228,082 |
| Total | $3,184,547 |

Admittedly, the jury awarded Rodgers a substantial sum; however, generosity of the jury's award does not alone justify trial court interference. The jury's verdict must be examined in the light of the real life facts: Rodgers, a working, married, family man, with a 30.5 year life expectancy, suffered a devastating injury and has been rendered a permanent quadriplegic. When the verdict is considered as a whole and in view of the totality of the evidence, I can-

not say that Rodgers' award was "so grossly excessive as to shock the conscience of [the] court."

Thus for the reasons stated above, I would reinstate the jury award for Mr. Rodgers.